
FILED
MAR 3 0 2009

UNITED STATED DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CATHEDRAL SQUARE PARTNERS LIMITED PARTNERSHIP; WEST PARK, LTD.; 46th STREET PARTNERS LIMITED PARTNERSHIP; and RIVERVIEW PROPERTIES, LTD. | CIV. 07-4001 |
| Plaintiffs, | |
| -vs- | MEMORANDUM OPINION AND ORDER |
| SOUTH DAKOTA HOUSING DEVELOPMENT AUTHORITY | |
| Defendant and Third-Party Plaintiff, | |
| -vs- | |
| ROY BERNARDI, Acting Secretary, United States Department of Housing and Urban Development, | |
| Third-Party Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs, Cathedral Square Partners Limited Partnership, West Park, Ltd., 46th Street Partners Limited Partnership, and Riverview Properties, Ltd., have sued Defendant and Third-Party Plaintiff, South Dakota Housing Development Authority ("SDHDA"), alleging that SDHDA breached their Housing Assistance Payment ("HAP") contracts which were established and are administered pursuant to Section 8 of the United States Housing Act of 1937. SDHDA's alleged breach stems from administering these HAP Contracts in accordance with the 1994 Amendments made by Congress to the statutes governing Section 8 and in accordance with Notice H 95-12, issued by the Housing Development Authority ("HUD") implementing the Congressional amendments. In turn, SDHDA sued Roy Bernardi ("the Secretary"), Acting Secretary of the United States

Department of Housing and Urban Development in his official capacity. SDHDA contends that this Court has subject matter jurisdiction over its Third-Party Complaint by invoking the Court's general federal question jurisdiction under 28 U.S.C. § 1331 together with the waivers of sovereign immunity provided by the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.*, or in the alternative, Section 1404a of the United States Housing Act of 1937, 28 U.S.C. § 1404a. The Secretary has moved to dismiss the Third-Party Complaint, alleging that these claims are within the exclusive jurisdiction of the Federal Court of Claims pursuant to the Tucker Act, 28 U.S.C. § 1491, and in the alternative, that this Court lacks jurisdiction to hear these claim as they fall outside the APA's and the United States Housing Acts's limited waivers of sovereign immunity. (Doc. 43.)

## BACKGROUND

Pursuant to Section 8 of the United States Housing Act of 1937, as amended, the United States, acting through the U.S. Department of Housing and Urban Development ("HUD"), subsidizes the rents of low-income tenants of privately-owned dwellings. 42 U.S.C. § 1437f. The rent subsidy is provided in one of two ways: either HUD enters into a Housing Assistance Payments contract ("HAP contract") directly with a private landlord or HUD enters into an Annual Contributions Contract ("ACC") with a public housing agency and the public housing agency enters into a HAP contract with the landlord. In either case, the HAP contract specifies a monthly contract rent for particular housing units. The contract rent is initially set by HUD to approximate the fair market value of the rental property for the local area, taking into account certain adjustments to reflect additional costs associated with complying with Section 8 requirements. The tenant pays the landlord a portion of the contract rent based on the tenant's income, and either HUD or the public housing agency pays the landlord the difference between the tenant's payment and the contract rent.

In addition to setting initial contract rents, HUD is responsible for adjusting the contract rents on at least an annual basis to reflect changes in the fair market rentals. The means by which HUD adjusts rents under its contracts are as follows: "The adjusted monthly amount of the Contract Rent of a dwelling unit shall be determined by multiplying the Contract Rent in effect on the anniversary

2

date of the contract by the applicable Automatic Annual Adjustment Factor...." 24 C.F.R § 888.203(b). HUD publishes these Adjustment Factors at least annually by notice in the Federal Register.

HUD entered into ACCs with Defendant/Third-Party Plaintiff, South Dakota Housing Development Authority ("SDHDA"), and SDHDA entered into HAP contracts with Plaintiffs Cathedral Square Partners Limited Partnership, West Park, Ltd., 46th Street Partners Limited Partnership, and Riverview Park, Ltd. Each of the HAP contracts that SDHDA entered into with Plaintiffs provided that "[o]n each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable annual adjustment factor most recently published by the Government."

In 1994, Congress amended Section 8 in two relevant respects. First, the Amendments provided that, "[w]here the maximum monthly rent, for a unit in a new construction, substantial rehabilitation, or moderate rehabilitation project, to be adjusted using an annual adjustment factor exceeds the fair market rental for an existing dwelling unit in the market area, the Secretary shall adjust the rent only to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area, as determined by the Secretary." 42 U.S.C. § 1437f(c)(2)(A) (1994). Second, the amendments provided that "[f]or any unit occupied by the same family at the time of the last annual rental adjustment, where the assistance contract provides for the adjustment of the maximum monthly rent by applying an annual adjustment factor and where the rent for the unit is otherwise eligible for an adjustment based on the full amount of the annual adjustment factor, 0.01 shall be subtracted from the amount of the factor, except that the annual adjustment factor shall not be reduced to less than 1.0." *Id.*

As part of its effort to implement the 1994 amendments, HUD issued Notice H 95-12 requiring owners to file timely rent comparability studies containing at least three examples of unassisted housing in the same market area of similar age, type and quality in order to receive a rent increase. According to the directive, any adjustment to the contract rent would be limited to the

3

lesser of (1) the "adjusted comparable rent," determined by adding to the comparable rent the initial difference (the amount by which the original contract rent exceeded the original comparable rent), or (2) the rent level adjusted by the appropriate annual adjustment factor.

As it was bound to do so under law, SDHDA administered its HAP contracts with the Plaintiffs in accordance with Congress's Amendments and HUD's Notice H 95-12.

Plaintiffs allege that by administering its HAP contracts with Plaintiffs in accordance with the 1994 Congressional Amendments and Notice H 95-12, SDHDA breached Plaintiffs' rights under the HAP Contracts and wrongly deprived them of rent increases for many years. In their Second Amended Complaint which was filed on June 24, 2008, Plaintiffs allege that SDHDA breached their HAP contracts on three grounds: (1) by failing to increase contract rents or by increasing contract rents less then the amount called for in the HAP contracts; (2) by reducing the annual adjustment factor by .01 for units occupied by the same family in consecutive years; and (3) by requiring plaintiffs to submit rent comparability studies. Plaintiffs request that the Court award compensatory damages for SDHDA's alleged breaches of contract as well as reimbursement for costs and expenses incurred in pursuing this matter in court. Additionally, Plaintiffs asks the Court to order SDHDA to increase the contract rents at Plaintiff's rental housing project to reflect the rent increases to which Plaintiffs are entitled under their HAP Contracts with SDHDA.

On June 10, 2008, SDHDA filed a Third-Party Complaint against Roy Bernardi, Acting Secretary, United States Department of Housing and Urban Development in which it alleges three claims for relief. First, SDHDA alleges that "[i]f HUD has caused SDHDA to breach Plaintiffs' HAP Contracts and to apply incorrect requirements and procedures to the adjustment of contract rents for other HAP Contracts to which SDHDA is a party, HUD's actions are arbitrary, capricious, an abuse of discretion, contrary to law, and contrary of constitutional right, in violation of 5 U.S.C. § 706." Accordingly, SDHDA contends that "HUD must provide any additional housing assistance payments, retroactive or prospective, to which plaintiffs or other Section 8 housing owners are entitled when adjustments to the contracts rents are calculated correctly and in conformance with applicable legal requirements." Second, SDHDA claims that if HUD has caused SDHDA to breach

4

its HAP Contracts with Plaintiffs, HUD has breached the related ACCs with SDHDA and SDHDA is "entitled to indemnification by HUD for all costs and expenses it has sustained or will sustain to remedy those breaches." Third, SDHDA "seeks a declaration of its rights and responsibilities in applying the 1994 amendments and Notice H 95-12 with respect to future adjustments of Contract Rents for the HAP Contracts to which it is a party, and its right to have such rent adjustments funded by HUD pursuant to the related ACCs."

The Secretary contends that the Court lacks jurisdiction over all claims asserted against him as they fall outside the waivers of sovereign immunity under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et. seq.*, and Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1404a. The Secretary asserts that pursuant to the Tucker Act, 28 U.S.C. §§ 1491, 1346(a)(2), these claims are within the proper jurisdiction of the Court of Federal Claims. The Secretary has thus moved to dismiss the Third-Party Complaint in its entirety.

## STANDARD OF REVIEW

To sue the United States, a plaintiff must show both a waiver of sovereign immunity and a grant of subject matter jurisdiction. *V.S. Ltd. P'ship v. HUD*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 139 (2d Cir. 1999)). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite to jurisdiction." *United States v. Navajo Nation*, 537 U.S. 488, 502, 123 S.Ct. 1079, 1089, 155 L.Ed.2d 60 (2003) (citation omitted). Even when the federal government does waive its immunity from suit, "limitations and conditions upon which the Government consents to be sued must be strictly observed, and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (citation omitted).

In considering the Secretary's challenge to its jurisdiction, the Court is not limited to the pleadings, but may consider the complaint, other undisputed facts in the record, and may make its own determination of disputed factual issues that bear on its jurisdiction. *Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635, 637 n.4 (8th Cir. 2003).

5

## DISCUSSION

SDHDA invokes the waiver of sovereign immunity provided by the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.* together with the Court's general federal question jurisdiction under 28 U.S.C. § 1331.[1] SDHDA asserts that its claims fall within the waiver of sovereign immunity under Section 702 and 704 of the APA because it is challenging the legitimacy of an agency action. 5 U.S.C. § 702. Specifically, SDHDA contends that HUD's implementation of Congress's 1994 Amendments and issuance of Notice H 95-12 caused it to breach its ACC Contracts with SDHDA and in turn, caused SDHDA to breach its HAP Contracts with Plaintiffs and that such actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 702.

SDHDA also contends that its claims fall within Section 8 of the United States Housing Act of 1937's waiver of sovereign immunity which provides that "[t]he Secretary of Housing and Urban Development may sue and be sued only with respect to its functions under the United States Housing Act of 1937." 42 U.S.C. § 1404a. SDHDA argues that federal courts have held that when Congress authorizes and agency to "sue and be sued," it is presumed that Congress has fully waived sovereign immunity for such suits, provided that the funds to satisfy any judgment come from funds under HUD's control, as SDHDA argues they do here, rather than general treasury revenue funds.

---

[1] In the Court's Order of December 15, 2008, the Court asked the parties to respond to whether the claims of Plaintiffs, Cathedral Square Partners Limited Partnership, West Park, Ltd., 46th Street Partners Limited Partnership, and Riverview Park, Ltd., arose under federal law such that this Court has jurisdiction over the case. The Court appreciates the parties' response to this matter and after reading briefs submitted by both parties as to this issue, the Court is satisfied that it has jurisdiction over the claims brought by Plaintiffs. The focus of this opinion will therefore be on whether the Court has jurisdiction over the claims asserted by SDHDA in this Third-Party Complaint.

The Secretary, however, argues that SDHDA's claims do not fall within either the APA's waiver of sovereign immunity or within the waiver of sovereign immunity under Section 8 of the United States Housing Act of 1937 and that under the Tucker Act such actions are within the exclusive jurisdiction of the Federal Court of Claims. Accordingly, the Secretary has moved to dismiss all the claims asserted by SDHDA in its Third Party Complaint.

I.  **Has sovereign immunity been waived in this Court under the APA?**

The Secretary contends that these claims are within the exclusive jurisdiction of the Federal Court of Claims pursuant to the Tucker Act and in the alternative, that the district court lacks jurisdiction to hear these claims as they fall outside the APA's waiver of sovereign immunity.

"The Tucker Act gives the Court of Federal Claims jurisdiction to hear monetary claims against the United States founded either upon an express or implied contract or upon a provision of the Constitution, or any Act of Congress, or any regulation of the executive department that 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" *Cartwright Int'l Van Lines v. Doan*, 525 F.Supp.2d 187, 194 (D.D.C. 2007) (quoting *United States v. Mitchell*, 463 U.S. 206, 217, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). The Tucker Act consists of two parts: 28 U.S.C. § 1491 and 28 U.S.C. § 1346(a)(2), which is commonly known as the "Little Tucker Act." The Little Tucker Act makes the jurisdiction of the Court of Federal Claims concurrent with the district court for civil actions or claims against the United States for $10,000 or less. 28 U.S.C. § 1346(a)(2).

The parties dispute whether claims founded upon a contract exceeding $10,000 are within the exclusive jurisdiction of the Court of Federal Claims. The Secretary states that every Circuit Court of Appeals to address the issue has concluded that the Tucker Act gives the Court of Federal Claims exclusive jurisdiction over all claims founded on a contract, a provision of the Constitution, a statute or executive regulation exceeding $10,000 and 'impliedly forbids' an award of declaratory and injunctive relief in a district court under the APA. (Sec'y Br. in Supp. of Mot. To Dismiss at

7

8-9.) SDHDA contends that "[a]lthough some circuit courts have ruled that the Tucker Act does impliedly forbid district courts from exercising jurisdiction over contract claims under the APA, those rulings find no support in the language of the Tucker Act, itself, and they are at odds with the Supreme Court's decision in *Bowen*."

The Court need not address this issue because, as discussed below, the claims SDHDA asserts in its Third-Party Complaint fall outside the waivers of sovereign immunity under the APA and Section 8.

The Supreme Court has explained that a litigant may invoke the APA's waiver of sovereign immunity to challenge the legitimacy of agency actions[2] in district court if the litigant can satisfy the several limitations Congress has placed on the waiver of sovereign immunity pursuant to both 5 U.S.C. § 702 and 5 U.S.C. § 704. *Bowen v. Massachusetts*, 487 U.S. 879, 891-92, 108 S.Ct. 2722, 2730-31 101 L.Ed.2d 749 (1988). In order to establish a waiver of sovereign immunity under the APA, a plaintiff must prove *all* of the following: (1) that it is seeking relief other than money damages, 5 U.S.C. § 702; (2) that no other statute that grants consent to suit expressly or impliedly forbids the relief which is sought, 5 U.S.C. § 702; and (3) that there is no adequate remedy available elsewhere, 5 U.S.C. § 704. *See also Transohio Sav. Bank v. Dir., Office of Thrift*, 967 F.2d 598, 607 (D.C. Cir. 1992).

The Secretary argues that all three limitations on the APA's waiver of sovereign immunity apply in this case and has thus moved to dismiss SDHDA's Third-Party Complaint for lack of subject matter of jurisdiction. Specifically, the Secretary argues that SDHDA primarily seeks compensatory, monetary damages. Additionally, the Secretary asserts that the Tucker Act impliedly forbids relief under the APA in this case because SDHDA's claims against the Secretary are based on allegations of breach of contract exceeding $10,000 over which, the Secretary argues, the Court of Federal Claims has exclusive jurisdiction. Finally, the Secretary claims that the Tucker Act

---

[2] Section 702 of the APA provides in relevant part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by the agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

provides an adequate remedy because pursuant to the Act, SDHDA may sue the Secretary in the Court of Federal Claims to recover indemnification for any retroactive or prospective increases in contract rents for which SDHDA may be found liable.

"[I]n determining whether a plaintiff's suit is to be heard in district court or the Court of Federal Claims, [a Court] must look beyond the form of the pleadings to the substance of the claim." *Suburban Mortgage Assoc., Inc. v. HUD*, 480 F.3d 1116, 1125 (Fed. Cir. 2007); *Reconstruction Fin. Corp. v. MacArthur Mining Co.*, 184 F.2d 913, 918 (8th Cir. 1950). Courts "will not tolerate a litigant's attempt to artfully recast its complaint to circumvent the jurisdiction of the Court of Federal Claims." *Consol. Edison Co. v. U.S. Dept. of Energy*, 247 F.3d 1378, 1385 (Fed. Cir. 2001); *Sellers v. Brown*, 633 F.2d 106, 107-08 (8th Cir. 1980) (per curiam).

The Court finds that the best place to begin in determining whether this Court has jurisdiction to hear the claims presented by SDHDA in its Third-Party Complaint is by analyzing whether the Court of Federal Claims can provide an adequate remedy under the Tucker Act for the alleged wrong. Except in limited circumstances not applicable in the present case,[4] the Court of Federal Claims has no power to grant equitable and prospective relief. *Bowen v. Massachusetts*, 487 U.S. 879, 905, 108 S.Ct. 2722, 2737, 101 L.Ed.2d 749 (1988); *see also Noot v. Heckler*, 718 F.2d 852, 858 (8th Cir. 1983). However, when a plaintiff's claims, regardless of the form in which the complaint is drafted, may be satisfied by a money judgment, then the proper forum for resolution of the dispute is not a district court under the APA but the Court of Federal Claims under the Tucker Act. *Surburban Mortgage Assoc., Inc. v. HUD*, 480 F.3d 1116, 1126 (Fed. Cir. 2007).

In its Third-Party Complaint, SDHDA alleges three causes of action against the Secretary. First, SDHDA alleges that "[i]f HUD has caused SDHDA to breach Plaintiffs' HAP Contracts and to apply incorrect requirements and procedures to the adjustment of contract rents for other HAP

---

[4] 28 U.S.C. § 1491(a)(2) provides that "[t]o provide an entire remedy and to complete the relief afforded by the judgment, the [Court of Federal Claims] may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records...."

Contracts to which SDHDA is a party, HUD's actions are arbitrary, capricious, an abuse of discretion, contrary to law, and contrary of constitutional right, in violation of 5 U.S.C. § 706." Accordingly, SDHDA states that HUD "must provide additional housing assistance payments, retroactive or prospective, to which plaintiffs or other Section 8 housing owners are entitled when adjustments to the Contract Rents are calculated correctly and in conformance with applicable legal requirements." Second, SDHDA claims that if HUD has caused SDHDA to breach its HAP Contracts with Plaintiffs, HUD has breached the related ACCs with SDHDA and SDHDA is "entitled to indemnification by HUD for all costs and expenses it has sustained or will sustain to remedy those breaches." Third, SDHDA "seeks a declaration of its rights and responsibilities in applying the 1994 amendments and Notice H 95-12 with respect to future adjustments of Contract Rents for the HAP Contracts to which it is a party, and its right to have such rent adjustments funded by HUD pursuant to the related ACCs."

The Secretary argues that a money judgment by the Federal Court of Claims provides SDHDA an adequate remedy in this case. (Sec'y Br. in Supp. of Mot. to Dismiss at 7.) In particular, the Secretary states that any retroactive payments due to SDHDA under its ACC contracts or to Plaintiffs under their HAP contracts are satisfied by a money judgment. Moreover, the Secretary contends that *res judicata* principles address any concerns about obtaining prospective relief from potential disputes regarding future rent adjustments. (*Id.* at 8.)

While "[t]he availability of an action for money damages under the Tucker Act or Little Tucker Act is presumptively an 'adequate remedy' for Section 704 purposes," *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005), SDHDA argues that a money judgment in the Court of Federal Claims is insufficient under the unique facts of this case. In support of its position, SDHDA discusses at length the United States Supreme Court's decision in *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

In *Bowen,* the Commonwealth of Massachusetts brought a suit challenging a decision by the Secretary of Health and Human Services that certain services provided in part by the state for the mentally retarded did not qualify for reimbursement under Medicaid regulations. The Court

10

concluded that a money judgment against the United States in the Court of Federal Claims was an inadequate remedy in the case in "light of the rather complex ongoing relationship between the parties." *Id.* at 905, 2738. Specifically, the Court in *Bowen* noted that "the interaction between the State's administration of its responsibilities under an approved Medicaid plan and the Secretary's interpretation of his regulations may make it appropriate for judicial review to culminate in the entry of declaratory or injunctive relief that requires the Secretary to modify future practices." *Id.* The Court also doubted whether the Court of Federal Claims even had jurisdiction to entertain the action or to enter a specific money judgment against the United States. *Id.*

SDHDA argues that as in *Bowen*, it is seeking interpretation of regulations and statutes[5] which may result in modifying the ongoing and allegedly complex contractual relationships between it and HUD and as such, a monetary judgment in the Court of Federal Claims is an inadequate remedy. Specifically, SDHDA contends that:

> [T]he alleged breaches of plaintiffs' HAP and ACC Contracts affect not only past rent increases that were denied, but also future annual rent increases during the remaining terms of the contracts, which range from 5 to 11 years. Moreover, SDHDA is a party to similar HAP Contracts which cover 77 properties and 2385 housing units. SDHDA cannot properly and uniformly administer these contracts on an ongoing basis without prospective relief that establishes, *for all these properties,*

---

[5]For example, SDHDA cites 42 U.S.C. § 1437f(c)(5) which provides that "[t]he Secretary shall take such steps as may be necessary ... to assure that assistance payments are increased on a timely basis to cover increases in maximum monthly rents or decreases in family incomes." Furthermore, SDHDA states that HUD regulation 24 C.F.R. § 883.604(b)(1), provides that a segregated project account will be established and maintained by HUD from each project from which payments will be made for housing assistance payments and fees for SDHDA administration, if appropriate, when needed to cover increases in contract rents and for other costs approved by the Secretary. SDHDA cites further HUD regulation 24 C.F.R. § 883.604(b)(2), which provides that whenever a HUD-approved estimate of required payments under an ACC for a fiscal year exceeds the maximum annual commitment, HUD will take such additional steps as may be necessary to assure that payments under the ACC will be adequate to cover increase in contract rents. (SDHDA Br. in Opp'n to Sec'y Mot. To Dismiss at 14.) SDHDA also *Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631, 646, 125 S.Ct. 1172, 161 L.Ed.2d 66 (2005) for the proposition that the 1994 Congressional Amendments and Notice 95-12 may violate the Constitution because they retroactively repudiate the Government's contractual obligations. (SDHDA Br. in Resp. to Supplemental Authority at 4.)

> (a) SDHDA's obligations with respect to calculating annual rent increases, and (b) HUD's obligations with respect to calculating and funding annual rent increases.

(SDHDA Br. in Resp. to Supplemental Authority at 4.)

SDHDA argues further that under *Bowen*, this Court has jurisdiction to award the monetary relief it seeks because such relief is incidental to the prospective, equitable relief it seeks under various statutes and regulations which allegedly govern HUD's funding obligations under Section 8. In *Bowen*, the Court recognized that the waiver of immunity under Section 702 is confined explicitly to claims seeking "other than money damages." *Bowen*, 487 U.S. at 900, 108 S.Ct. at 2735. The Court concluded that the State's suit to overturn a decision by the Secretary disallowing reimbursement under the Medicaid Act was not seeking money "in compensation for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it [was] a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." The Court therefore concluded that the substance of the State's suit was one for specific relief, not money damages, and thus the suit fell within Section 702's waiver of immunity. *Id.* at 900-01, 2735-36.

The Court finds that contrary to the Court's holding in *Bowen*, a money judgment in the Court of Federal Claims is an adequate substitute for the prospective relief that SDHDA seeks in this case. The facts of this case are actually quite different from that in *Bowen*. The allegation in *Bowen* was that the Secretary of Health and Human Services was interpreting Medicaid regulations contrary to what Congress had intended. A decision by the district court on the interpretation issue in *Bowen* could therefore affect future reimbursement payments under the Medicaid program. The claim in this case, however, is not that HUD is improperly administering the 1994 Congressional Amendments, but rather that the Amendments and HUD's subsequent implementation of those regulations through Notice H 95-12 are themselves unlawful because they violate the Constitution and various statutes and regulations which mandate funding by the Government of the Section 8 contracts. The statutes and regulations cited by SDHDA, unlike those in *Bowen*, may not serve to modify the future rights and responsibilities of the parties because there is no dispute that the 1994 Amendments are the supreme law of the land. *Cuyahoga Metro. Hous. Auth. v. United States*, 65

Fed. Cl. 534, 544 (2005) ("There is no real debate that the 1994 Act is the law of the land."). There is no evidence in the record of anything in the ACC and HAP contracts which purportedly barred the Government from changing the way in which it regulated Section 8. *United States v. Winstar Corp.*, 518 U.S. 839, 868, 116 S.Ct. 2432, 2452, 135 L.Ed.2d 964 (1996). Such contracts, the United States Supreme Court has concluded, should be "interpreted as one to pay damages if performance is prevented rather than one to render a performance in violation of law." *Id.* at 869, 2452 (quoting Restatement (Second) of Contracts § 264).

For these reasons, the argument by SDHDA that the Court has jurisdiction to hear its claims because it primarily seeks prospective relief pursuant to various statutes and regulations governing the rights and responsibilities of the parties under Section 8 is without merit.

The fact that the statutes and remedies do not provide SDHDA a right to relief in this case does not mean SDHDA is without a remedy, as the Government will still be responsible for any breach of contract which may result from the new legislation. *Cuyahoga Metro Housing Auth. v. United States ("Cuyahoga II")*, 57 Fed. Cl. 751, 779 (Fed. Cl. 2003) (stating that the unmistakability doctrine was not applicable to shield the government from liability for breach of HAP contracts which occurred when Congress passed 1994 amendments to the United States Housing Act because such legislation deliberately targeted HUD's contractual obligations under preexisting HAP contracts in an effort to reduce outlays under the Section 8 program.). The Court finds, however, that a money judgment in the Court of Federal Claims for any such breach will be adequate. With regard to the retroactive payments SDHDA seeks under the ACC and HAP Contracts, a money judgment in the Court of Federal Claims will give the parties the exact relief sought. The Court understands that the Court of Federal Claims does not have the power to grant future payments to which SDHDA and Plaintiffs may be entitled under the terms of their contracts. However, the Court finds that as in *Consol. Edison Co. v. U.S. Dept. of Energy*, 247 F.3d 1378, 1384-85 (Fed. Cir. 2001), that any such prospective relief will be satisfied by the *res judicata* effect of a money judgment. *See also Bowen*, 487 U.S. at 926-27, 108 S.Ct. at 2749 (Scalia J., dissenting) (disagreeing with majority that there was no adequate remedy in the Claims Court since a successful claims for money damages in the Claims Court would have precedential as well as collateral estoppel effect and therefore would

be as effective in establishing the state's future rights as would a declaratory judgment in district court.").

The Court understands that the unfortunate result of its decision is that SDHDA will have to engage in piecemeal litigation first in this Court as a Defendant and then, if Plaintiffs are successful, seek relief from the Secretary in the Court of Federal Claims. However, inconvenience is simply an insufficient reason to circumvent the jurisdiction of the Court of Federal Claims.

## II. Has sovereign immunity been waived in this Court under the Section 8 of the United States Housing Act of 1937?

SDHDA contends that sovereign immunity is waived under Section 1404a of the United States Housing Act of 1937. 42 U.S.C. § 1404a. Section 1404a provides that the "[t]he Secretary of the Housing and Urban Development may sue and be sued only with respect to its functions under the United States Housing Act of 1937." 42 U.S.C. § 1404a. The Secretary argues that he is only a nominal party and that the suit is in reality a suit against the United States because any judgment would be satisfied from the public treasury and therefore sovereign immunity bars jurisdiction in this Court.

While SDHDA names the Secretary rather than the United States as a party to this action, "the nominal classification attached to a party is not dispositive for sovereign immunity inquiries." *5th Bedford Pines Apartments, Ltd. v. Brandon*, 262 F.Supp.2d 1369, 1375-76 (N.D. Ga. 2003) (citing *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)). "Instead, the nature of the relief sought is the guiding factor in determining whether a suit is against an agency or the United States itself. To avoid the bar of sovereign immunity, 'any judgment for the plaintiff must be recoverable from funds in the possession and control of the Secretary that are severed from Treasury funds and Treasury control.'"[6] *Id.* (quoting *Indus. Indem. Inc. v. Landrieu*, 615 F.2d 644,

---

[6] In reading the parties' briefs in support of and in opposition to the Secretary's motion to dismiss, it appeared that they were in agreement that whether a claim for relief is considered as against the United States for purposes of a waiver of sovereign immunity under 42 U.S.C. §

646 (5th Cir. 1980)); *see Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 676 n.9 (8th Cir. 1986) (stating that resolving questions of Tucker Act jurisdiction requires a court to distinguish between suits against the United States and suits against federal instrumentalities. "Drawing this distinction requires a determination whether any recovery of damages may be had only from funds in the possession and control of the agency or whether recovery may be had from public funds in the United States Treasury.").

As discussed above, the statutes and regulations cited by SDHDA may not serve to modify the future rights and responsibilities of the parties as SDHDA seeks to do, and its only avenue of

---

1404a depends on whether recovery of damages will be had from the public treasury. However, in its response to the Secretary's Notice of Supplemental Authority, SDHDA appears to contradict its first assertion by arguing to the Court that under the Eighth Circuit's opinion in *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174, 180-81 (8th Cir. 1978), the Court need not look at the source of funds in deciding the sovereign immunity question, but just at whether the claims at issue relate to acts performed by the Secretary in carrying out his functions under the United States Housing Act of 1937. (Response to Supplemental Authority at x.)

While the Supreme Court has recognized that "sue-and-be-sued waivers are to be 'liberally construed,' notwithstanding the general rule that waivers of sovereign immunity are to be read narrowly in favor of the sovereign," *FDIC v. Meyer*, 510 U.S. at 480, the Court finds the Eighth Circuit's decision in *Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 676 n.9 (8th Cir. 1986) to be controlling in this case. As a result, the resolution of this jurisdictional issue requires the Court to determine the source of funds that will be used to pay a judgment in this case. *Bor-Son Bldg. Corp.* concerned the applicability of the "sue and be sued" provision under the National Housing Act, 12 U.S.C. § 1702, which is not at issue in this case, whereas *Weeks* focused on the precise question that is before the Court. In *Weeks,* the Eighth Circuit examined whether jurisdiction was proper in the district court under Section 1404a of the United States Housing Act of 1937, 42 U.S.C. § 1404a, or whether jurisdiction properly lay in the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491. The Court held that resolving questions of Tucker Act jurisdiction requires a court to distinguish between suits against the United States and suits against federal instrumentalities. *Id.* at 676 n.9. The jurisdiction of the Federal Court of Claims under the Tucker Act is limited to claims "*against the United States,* founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States...." 28 U.S.C. § 1491(a)(1), whereas a waiver of sovereign immunity under 42 U.S.C. § 1404a will be found only for claims that are not considered to be against the United States. "Drawing this distinction," the Court in *Weeks* stated, "requires a determination whether any recovery of damages may be had only from funds in the possession and control of the agency or whether recovery may be had from public funds in the United States." *Weeks*, 797 F.2d at 676 n.9.

15

relief against the Secretary is for breach of its ACC contracts. All of the cases that have examined the issue have concluded that funds from ACC contracts come from the public treasury, not from funds within the control of HUD. *Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 473 (4th Cir. 1983) ("The funds appropriated to HUD for payment of operating subsidies clearly originate in the public treasury, and they do not cease to be public funds after they appropriated."); *5th Bedford Pines Apartments, Ltd. v. Brandon*, 262 F.Supp.2d 1369 (N.D. Ga. 2003) (evaluating whether terms of a contract between landlord and HUD required HUD to pay housing assistance payments into state magistrate court's registry to make up the difference between tenant's subsidized rent amount and full amount of rent that was being required by court for tenant); *Fryer v. Kemp*, 774 F.Supp. 1033 (W.D. La. 1991); *Carlyle Gardens Co. v. Del. State Hous. Auth.*, 659 F.Supp. 1300 (D. Del. 1987); *1610 Corp. v. Kemp*, 753 F.Supp. 1026 (D. Mass. 1991); *Greenleaf Ltd P'ship v. Ill. Hous. Dev. Auth.*, Nos. 08-2480, 08-3446, 2009 WL 449100 (N.D. Ill. Feb. 23, 2009).

For the foregoing reasons, the Court finds that the claims asserted by SDHDA in its Third-Party Complaint are against the United States, as the real party in interest. The United States has not waived its immunity as to these claims under 42 U.S.C. § 1404a and the claims are therefore dismissed for lack of jurisdiction.[7]

---

[7] The Court also notes that if the Secretary and not against the United States is deemed as the real party in interest for Section 1404a purposes, jurisdiction may not lie in the Court of Federal Claims under the Tucker Act. Tucker Act jurisdiction is limited to claims "*against the United States* founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491. This view is further supported by *Weeks*, 797 F.2d at 676 n.9, in which the Eighth Circuit explicitly stated that whether jurisdiction is proper in the district court under Section 1404a of the United States Housing Act of 1937, 42 U.S.C. § 1404a, or whether jurisdiction properly lay in the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491, depends on whether the action is one against the United States or a federal instrumentality.

It does not appear in the briefs that SDHDA argues that the Court of Federal Claims lacks jurisdiction under the Tucker Act to hear the claims presented by SDHDA in its Third-Party Complaint. SDHDA contends, rather, that a monetary judgment in the Court of Federal Claims is an inadequate remedy in this case and that the district court also has jurisdiction to hear these claims pursuant to the waivers of immunity found in the APA and Section 1404a of the United States Housing Act of 1937.

It is hereby ORDERED that the Secretary's Motion to Dismiss SDHDA's Third Party Complaint, Doc. 43, is GRANTED. SDHDA's claims fall outside the waivers of sovereign immunity under the APA and the United States Housing Act of 1937 and thus this Court lacks subject matter jurisdiction over these claims. SDHDA's claims against the Secretary are dismissed without prejudice.

Dated this 30 day of March, 2009.

BY THE COURT:

*Lawrence Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *Summa Walufd*
DEPUTY