

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED

JAN 0 5 2011

*************************************************************************

|  |  |  |
|---|---|---|
| | * | |
| CATHEDRAL SQUARE PARTNERS | * | CIV 07-4001 |
| LIMITED PARTNERSHIP; WEST PARK | * | |
| LTD.; 46th STREET PARTNERS | * | |
| LIMITED PARTNERSHIP; and | * | |
| RIVERVIEW PARK, LTD., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| SOUTH DAKOTA HOUSING | * | |
| DEVELOPMENT AUTHORITY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

*************************************************************************

Plaintiffs are owners of four multifamily rental housing projects that receive assistance under Section 8 of the United States Housing Act of 1937 (Section 8) and each plaintiff is a party to a Housing Assistance Payments Contract with Defendant South Dakota Housing Authority. In their Second Amended Complaint Plaintiffs allege three counts of breach of contract in connection with their Housing Assistance Payments Contract with Defendant. (Doc. 38). Pending before the Court are the parties' motions for summary judgment. Doc. 73, 74, 87, 91.

Principles of Summary Judgment

Summary judgment shall be entered if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).The filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, nor does it have the effect of submitting the

cause to a plenary determination on the merits. *Wermager v. Cormorant Twp. Bd.*,716 F.2d 1211, 1214 (8th Cir. 1983).

## STATUTORY AND FACTUAL BACKGROUND

### Section 8 Housing Program

In 1974 Congress amended the United States Housing Act of 1937 to create the Section 8 housing program. *See* 42 U.S.C. § 1437f. Under the Section 8 program the United States Department of Housing and Urban Development (HUD) subsidizes the rents of low-income tenants of privately owned dwellings. Rent subsidies are provided by means of a Housing Assistance Payments Contract with the private landlord that establishes contract rents for the relevant apartment units. The tenant pays the landlord a portion of the contract rent based on the tenant's income and the balance of the rent is paid by a housing assistance payment pursuant to the Housing Assistance Payments Contract. Section 8 provides for adjustments, at least annually, of the rents under the Housing Assistance Payments Contracts by the use of automatic annual adjustment factors which are published in the Federal Register. *See* 42 U.S.C. § 1437f(c)(2)(A)-(C); 24 C.F.R. § 888.201-202 (2009).

HUD provides the funding for the housing assistance payments, either directly or through a state or local housing agency such as the South Dakota Housing Development Authority, the defendant in the case at hand. Section 8 authorizes HUD to enter into a funding contract, called an Annual Contributions Contract with a state agency, and the state agency then enters into a Housing Assistance Payments Contract with the landlord. Alternatively, where there is no public housing authority or no public housing authority able to implement the provisions of the program, HUD may enter into a Housing Assistance Payments Contract directly with the landlord. *See* 42 U.S.C. § 1437f(b)(1).

### Contracts Involving Plaintiffs and Defendant South Dakota Housing Development Authority

Between 1978 and 1983, the South Dakota Housing Development Authority entered into Annual Contributions Contract with HUD and Housing Assistance Payments Contracts with Plaintiffs. Plaintiff Cathedral Square Partners Limited Partnership is the owner of Cathedral Square Apartments, a multifamily housing rental project located in Mitchell, South Dakota. Cathedral Square Apartments was built, and is assisted, under HUD's Section 8 Program. In 1979, Cathedral Square Limited, the original owner of Cathedral Square Apartments, entered into a Housing Assistance Payments Contract with Defendant South Dakota Housing Development Authority. Paragraph 1.9b

2

of this contract, the rights and obligations of which were later assigned to Plaintiff Cathedral Square

Partners Limited Partnership, contains the following provision regarding rent adjustments:

> Automatic Annual Adjustments
> (1) Automatic Annual Adjustment Factors will be determined by the Government at least annually; Interim revisions may be made as market conditions warrant. Such Factors and the basis for their determinations will be published in the Federal Register.
> . . .
> (2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

The Cathedral Square Contract contains the following Overall Limitation provision at paragraph 1.9d:

> Notwithstanding any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the [South Dakota Housing Authority] ... provided, that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the Initial Contract Rents.

Plaintiff 46th Street Partners Limited Partnership is a South Dakota limited partnership that owns Western Heights Apartments, a multifamily housing rental project located in Sioux Falls, South Dakota. Western Heights Apartments was built, and is assisted, under HUD's Section 8 Program. The original owner of Western Heights Apartments, Western Heights Limited, entered into a Housing Assistance Payments Contract with Defendant South Dakota Housing Development Authority in 1978. In 2002, Western Heights Limited sold Western Heights Apartments to 46th Street Partners and assigned all of its rights, title and interest in the Western Heights Contract to 46th Street Partners. Paragraph 1.9b of the 1978 Western Heights Contract contains the same Automatic Annual Adjustments provision as the one contained in the Cathedral Square Contract. Paragraph 1.9d of the 1978 Western Heights Contract contains the same Overall Limitation provision as the one contained in paragraph 1.9d of the Cathedral Square Contract.

Plaintiff Riverview Park, Ltd. is a South Dakota limited partnership that owns Riverview Park Apartments, a multifamily housing rental project located in Sioux Falls, South Dakota. Riverview Park

3

Apartments was built, and is assisted, under HUD's Section 8 Program. In 1981, Riverview Park, Ltd. entered into a Housing Assistance Payments Contract with Defendant South Dakota Housing Development Authority. Paragraph 1.9b of the 1981 Riverview Park Contract contains the same Automatic Annual Adjustments provision as the ones contained in the Western Heights Contract and Cathedral Square Contract. Paragraph 1.9d of the 1978 Western Heights Contract contains the same Overall Limitation provision as the ones contained in the Western Heights Contract and Cathedral Square Contract.

Plaintiff West Park, Ltd. is a South Dakota limited partnership. West Park, Ltd. is the owner of West Park Apartments, a multifamily housing rental project located in Rapid City, South Dakota, which was built, and is assisted, under HUD's Section 8 Program. In 1983, West Park, Ltd. entered into a Housing Assistance Payments Contract with Defendant South Dakota Housing Development Authority. Paragraph 2.7(b) of the West Park Contract deals with rent adjustments. This provision is unlike the rent adjustment provisions in the contracts involving the other Plaintiffs, in that is not characterized as "automatic." Paragraph 2.7(b) of the West Park Contract provides:

> Annual Adjustments
> (1) *Upon request from the Owner to the HFA*[1] Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 888 and this Contract. See, however, paragraph (d).
> (2) Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the annual adjustment result in Contract Rents less than the Contract Rents on the effective date of the Contract.

[Emphasis added].

In language nearly identical to that in the other Plaintiffs' contracts, Paragraph 2.7(d), the Overall Limitation provision in the West Park Contract, states in relevant part:

> Notwithstanding any other provision of this Contract, adjustments after Contract execution or cost certification, where applicable, shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by [the South Dakota Housing Authority]; ... except to the extent that the differences existed with respect to the Contract Rents set at Contract execution or cost certification, where applicable.

---

[1]An HFA is a housing finance agency. In the case of the contracts in issue, the HFA is The South Dakota Housing Authority.

4

Amendments to the Section 8 Program

In the early 1980's, after HUD began to suspect that the assistance payments it was making to some landlords under the Section 8 program exceeded prevailing market rates for comparable housing, HUD began to conduct independent "comparability studies" in real estate markets to attempt to determine whether contract rents, adjusted upward by the automatic adjustment factors, were materially out of line with market rents. In these comparability studies, HUD would select between three and five other apartment buildings it considered comparable to the Section 8 building and compare the rents. The private market rents of the comparable apartment building then served as an independent cap limiting the rent payments HUD would make to the landlords under the Section 8 contracts.

Congress amended the Housing Act in late 1989 to specify that HUD may limit automatic rent adjustments in the future through the use of independent comparability studies. The amendments, however, offered Section 8 project owners a partial retroactive remedy for lost rent attributable to comparability studies utilized before the 1989 amendments. Private landlords who participated in Section 8 housing program challenged the Department of Housing and Urban Development Reform Act of 1989 on due process grounds. In *Cisneros v. Alpine Ridge Group*, 508 U.S. 10 (1993), the Supreme Court declined to consider the constitutional challenges but held that the language of the assistance contracts in issue did not prohibit the use of comparability studies to impose an independent cap on formula-based rent adjustments. The Court explained that § 1.9d of the assistance contracts, the overall limitation provision, by its own terms clearly envisioned some comparison of assisted and unassisted rents and that this provision afforded HUD sufficient discretion to design and implement comparability studies, since that provision expressly assigned to the Government the determination of whether material rent differences exist. 508 U.S. at 18.

In 1994 Congress again altered Section 8 to reduce by .01 the annual adjustment factor for units occupied by the same tenant during the previous year. The 1994 Amendments also state that "where the maximum monthly rent ... to be adjusted using an annual adjustment factor exceeds the fair market rental for an existing dwelling unit in the market area, the Secretary shall adjust the rent only to the extent that *the owner* demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area, as determined by the

5

Secretary." 42 U.S.C. § 1437f(c)(2)(A)(emphasis added).

Following the adoption of the 1994 Amendments, HUD issued Notice H 95-12 to implement the Amendments and impose additional requirements. This Notice required owners to submit an "Estimate of Market Rent by Comparison" on form HUD-92273 at least 60 days prior to a Housing Assistance Payment Contract anniversary date if the owner desired an annual rent adjustment.

HUD publishes annually a Notice of Revised Contract Rent Annual Adjustment Factors for the various markets across the country. In these notices, HUD explains its computation of the automatic annual adjustment factor and cites the data on which it has relied. The resulting automatic annual adjustment factors are set forth in Table 1, and are applied to turnover units. A separate Table 2 for non-turnover units is also published, in which the automatic annual adjustment factors for each market are computed by subtracting .01 from the automatic annual adjustment factors in Table 1.

Impact of the Amendments and Resulting Lawsuit

The South Dakota Housing Development Authority has not performed or obtained a rent comparability study of Cathedral Square Apartments, West Park Apartments or Riverview Park Apartments, nor has it made a determination of the rents charged for unassisted units that are comparable to the units at these apartments. The South Dakota Housing Development Authority did not approve an increase in the rents at Western Heights Apartments in the years 2002, 2003, 2004, 2005 or 2006. The South Dakota Housing Development Authority approved an increase in the rents at West Park Apartments effective January 1, 2007, and the parties are in dispute as to whether this was the only rent increase at West Park approved by the South Dakota Housing Development Authority for West Park Apartments since 1996. The South Dakota Housing Development Authority has approved some increases in the Contract Rents for 2-bedroom and 3-bedroom units at the Riverview Park projects since the issuance of Notice 95-12, but not in the amount Riverview Park, Ltd. believes it is entitled.

On January 3, 2007, Plaintiffs filed this action for three counts of breach of contract. In their Second Amended Complaint, Plaintiffs base their first cause of action for breach of contract on the South Dakota Housing Development Authority's alleged failure, since the issuance of Notice 95-12, to increase the contract rents at Plaintiffs' projects in accordance with the terms of the Housing Assistance Payments Contracts between Plaintiffs and the South Dakota Housing Development

6

Authority. The second cause of action for breach of contract is based on the South Dakota Housing Development Authority's reduction of the annual adjustment factors otherwise applicable to Section 8 projects, including Plaintiffs' projects, by .01 for non-turnover units, which Plaintiffs contend is in violation of the terms of their Housing Assistance Payments Contracts. The third cause of action for breach of contract is based on the requirement that Plaintiffs, as owners of Section 8 projects, must submit Rent Comparability Studies, a requirement that Plaintiffs contends is not included within and contrary to the terms of their Housing Assistance Payments Contracts. In addition, Plaintiff West Park, Ltd., contends it has been further damaged by incurring costs to obtain the Rent Comparability Studies that it submitted.

## DISCUSSION

### I.
### WHETHER SHIFTING THE BURDEN TO THE LANDLORD TO PROVE ENTITLEMENT TO ANNUAL RENT INCREASES CONTEMPLATED IN THE HOUSING ASSISTANCE PAYMENTS CONTRACTS CONSTITUTES A BREACH OF THE CONTRACTS?

Plaintiff Cathedral Square Partners Limited Partnership, Plaintiff 46th Street Partners Limited Partnership, and Plaintiff Riverview Park, Ltd.

The Housing Assistance Payments Contracts for Plaintiffs Cathedral Square Partners Limited Partnership, 46th Street Partners Limited Partnership, and Riverview Park, Ltd. all contain "Automatic Annual Adjustment" provisions. In support of their position that their contracts were breached by shifting the burden to the landlord to prove entitlement to annual rent increases, Plaintiffs rely upon cases from the United States Court of Federal Claims which dealt with Housing Assistance Payments Contracts between housing authorities and HUD.

In *Cuyahoga Metro. Hous. Auth. v. United States*, 57 Fed. Cl. 751 (1983), the contracts under consideration, like the contracts involving the Plaintiffs in this case, specified that "Automatic Annual Adjustment Factors will be determined by the Government at least annually" and that "[o]n each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government." Judge Allegra in the *Cuyahoga* case held that the "'automatic' references in these provisions, as well as the annual

7

periodicity established therein, plainly reveal an intent that the adjustments would occur without [the housing authority] having to take any significant action." 57 Fed. Cl. at 759. Judge Allegra acknowledged that the automatic nature of these adjustments was qualified by the "overall limitation," provisions which prohibit material differences between the rents charged for assisted and comparable unassisted units, "as determined by the Government." Judge Allegra reasoned, however, that this latter provision required HUD, not the project owners, to determine whether a material difference existed. Although Judge Allegra noted that the provision did not identify whether HUD or the project owners must bear the burden of showing whether there was a material difference, Judge Allegra reasoned that logic suggests that for the adjustments referenced in the contract to be truly "automatic," the burden of demonstrating a material difference must be born by HUD. 57 Fed. Cl. at 759.

The *Cuyahoga* opinion also relied upon the Supreme Court's characterization of the "overall limitation" in *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 19-20 (1993).[2] Judge Allegra reasoned that both the Supreme Court's reference to comparability studies being invoked only in "exceptional cases" and to automatic adjustments being "presumptive" were inconsistent with the position that the same contract provision could be construed to require property owners to provide comparability studies as a precondition to receiving an "automatic" adjustment. In addition, Judge Allegra noted the Supreme Court's admonition that "if respondents have been denied formula-based rent increases based on shoddy comparisons, their remedy is to challenge the particular study, not to deny HUD's authority to make comparisons." *Cuyahoga*, 57 Fed. Cl. at 760(quoting *Cisneros v. Alpine Ridge Group*, 508 U.S. at 20-21). The *Cuyahoga* opinion also observed that the statutory mechanism surrounding the

---

[2] The Supreme Court in *Cisneros v. Alpine Ridge Group* stated:

> The rent adjustments indicated by the automatic adjustment factors remain the presumptive adjustment called for under the contract. It is only those presumably exceptional cases where the Secretary has reason to suspect that the adjustment factors are resulting in materially inflated rents that a comparability study would ensue. Because the automatic adjustment factors are themselves geared to reflect trends in the local or regional housing market, theoretically it should not be often that the comparability studies would suggest material differences between Section 8 and private-market rents.

508 U.S. at 19-20.

8

Section 8 program, from its passage in 1974 until it was modified in 1995, clearly envisioned that annual adjustments were to be automatic unless HUD promptly performed a comparability study. All of these considerations led the Court of Federal Claims in the *Cuyahoga* case to conclude that HUD never had the power, under the original Section 8 program, to require project owners to present a comparability study as a precondition to receiving an adjustment on contract rents. The Court of Federal Claims in the *Cuyahoga* case construed the requirement as a "new and fundamental change in the deal previously executed" and as a *prima facie* breach of the Housing Assistance Payments Contracts. 57 Fed. Cl. at 762. The Court of Federal Claims in the *Cuyahoga* case further held that this prima facie breach was exacerbated by HUD's 1995 directive imposing additional requirements not envisioned in the Housing Assistance Payments Contracts or in the prior legislation. *Id.*

After having determined that a *prima facie* breach existed, Judge Allegra, in the *Cuyahoga* case then determined whether the government reserved the right to pass the 1994 amendments under the "unmistakability doctrine," so as to determine whether there had been an actual breach of contract. The "doctrine of unmistakability," is a rule of government contracting involving a canon of contract construction that holds that surrenders of sovereign authority must appear in unmistakable terms, and that a contract with a sovereign government will not be read to include an unstated term exempting the other contracting party from the application of a subsequent sovereign act, including an Act of Congress. *See United States v. Winstar Corp.*, 518 U.S. 839 (1996)(Per Souter, J., with three Justices concurring and three Justices concurring in the judgment). The application of the unmistakability doctrine depends, however, on whether enforcement of the contractual obligation in issue would block the exercise of a sovereign power of the Government. *See Coast-to-Coast Financial Corp. v. United States*, 45 Fed. Cl. 796, 802 (2000). The unmistakability doctrine applies when the Congress acts to protect public safety, morals or the economy; but it does not apply when the Congress simply targets the government's contractual obligations in an effort to obtain a better deal. *Cuyahoga*, 57 Fed. Cl. at 774. Judge Allegra observed that when Congress passed the 1994 amendments, Congress did not act to protect public safety, morals or the economy, but rather, Congress adopted a number of HUD-sponsored changes to the Section 8 program for the purpose of saving money. *Cuyahoga*, 57 Fed. Cl. at 777. Judge Allegra also observed that the unmistakablility doctrine does not apply where Congress, after acting to change its contractual obligations for the purpose of saving money,

9

then merely uses the funds saved from reneging on government contracts for other public purposes. *Cuyahoga*, 57 Fed. Cl. at 779. Judge Allegra then concluded that the 1994 amendments to the Section 8 program, and the subsequent HUD directive, effectuated a general breach of contract of the Housing Assistance Payments Contracts. 57 Fed. Cl. at 780.

In *Statesman II Apartments, Inc. v. United States*, 66 Fed. Cl. 608 (2005), Judge Lettow from the United States Court of Federal Claims also rejected the application of the unmistakability doctrine in a breach of a Housing Assistance Payments Contract case. Judge Lettow also held that the 1994 amendments to the United States Housing Act and HUD notice which shifted the burden to landlords to prove entitlement to annual rent increases repudiated the automatic adjustment provisions of housing assistance payments contracts between HUD and landlords, and led to their breach. *See also, Park Props. Assocs., L.P. v. United States*, 74 Fed. Cl. 264 (2006)(Judge Allegra).

In attempting to distinguish this case from the cases from the United States Court of Federal Claims, the South Dakota Housing Authority argues that the Court of Federal Claims cases involving contracts with HUD were supported by the "prevention doctrine." The prevention doctrine provides that where one party to a contract prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, that party is not relieved of the obligation to perform. *See Park Props. Assocs., L.P. v. United States*, 82 Fed. Cl. 162, 170-173 (2008). South Dakota Housing Authority argues that this doctrine does not apply to it because it was simply the "contract administrator" of the housing assistance payments contracts in this case and that the alleged contract breaches were caused by a third party, the United States. Regardless of whether the "prevention doctrine" applies to the South Dakota Housing Authority, the automatic adjustment provision of the contracts was breached by application of the 1994 amendments to the United States Housing Act and HUD notice which shifted the burden to landlords to prove entitlement to annual rent increases. *See, e.g., Greenleaf Ltd. P'ship v. Illinois Hous. Dev. Auth.*, 2009 WL 5166225 at *6 n.3 (N.D.Ill. Dec. 23, 2009)(breach found when Defendant was a state agency even though prevention doctrine was held not to apply).[3] Plaintiffs Cathedral Square Partners Limited Partnership, 46th Street

---

[3]The Court finds the *Greenleaf* decision more persuasive than the memorandum decision, *Arlington Housing Partners, Inc. v. Ohio Housing Finance Agency*, No. 09CVH07-9859 (Ohio Common Pleas, July 2, 2010), cited and provided by South Dakota Housing Authority.

Partners Limited Partnership, and Riverview Park, Ltd. are entitled to summary judgment on the issue of whether their Housing Assistance Payments Contracts were breached by the shifting of the burden to the landlord to prove entitlement to annual rent increases.

Plaintiff West Park, Ltd.

The Housing Assistance Payments Contract with Plaintiff West Park, Ltd. differs from the contracts with the other plaintiffs in this action in that the rent adjustments provision is not characterized as "automatic," and provides that "[u]pon request from the Owner to [South Dakota Housing Development Authority] Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 888[4] and this Contract. " In that respect the West Park, Ltd. contract also differs from the contracts in *Cuyahoga Metro. Hous. Auth. v. United States*, 57 Fed. Cl. 751 (2003), *Park Props. Assoc., L.P. v. United States*, 74 Fed. Cl. 264 (2006), and *Statesman II Apartments, Inc. v. United States*, 66 Fed. Cl. 608 (2005). South Dakota Housing Development Authority argues that West Park has failed to fulfill a condition precedent to the rent increases and there is no liability for any failure to provide such increases.

Plaintiffs argue that the proper interpretation of West Park's housing assistance payments contract, when construing the language of the contract as a whole, requires that SDHDA adjust contract rents automatically. Under 24 C.F.R. Part 888, "Automatic Annual Adjustment Factors are used to adjust rents under the Section 8 Housing Assistance Payments Program." 24 C.F.R. 888.201 (2010). In making such adjustments, 24 C.F.R. § 888.203(b) provides that "the Contract Rent . . . shall be determined by multiplying the Contract Rent...by the applicable Automatic Annual Adjustment Factor...." 24 C.F.R. § 888.203(b). Plaintiffs argue that because West Park's contract incorporates the terms of the regulations, specifically, the terms "automatic"and "annual" as applied to rent increases, the rent adjustments were to occur automatically, notwithstanding the different contract language in West Park's contract.

In *Haddon Hous. Assocs., LLC v. United States*, 92 Fed. Cl. 8, 19 (2010), Judge Lettow in the Court of Federal Claims examined an argument similar to ones advocated by Plaintiffs in a case

---

[4]24 C.F.R. § 888.203 at the relevant times provided for the use of contract rent automatic annual adjustment factors. 24 C.F.R § 888.20 at the relevant times provided that adjustment factors be published in the Federal Register at least annually by Notice.

11

involving contractual language similar to that found in West Park's contract. Judge Lettow found, in applying the basic rules of contract interpretation, that the plaintiff lessor of a low-income rental housing project was required pursuant to the terms of its housing assistance payments contract to request a rent increase as a condition precedent to receiving such increase. 92 Fed. Cl. at 19. Judge Lettow found that "[o]n its face, the HAP Contract appears to require plaintiffs to request rent increases." *Id.* Judge Lettow concluded that such a requirement was not necessarily inconsistent with the regulations which refer to "Automatic Annual Adjustment Factors." *Id.* In so concluding, Judge Lettow reasoned that "[a] contract could require one party to request a rent adjustment that was then applied according to automatic adjustment factors." *Id.* In the *Haddon Housing* case, however, the defendant's motion for summary judgment was denied because questions of material fact existed as to whether the plaintiff had made a request for the rent increases in issue. *Id.*

In *Greenleaf L.P. v. Illinois Hous. Dev. Auth.*, 2010 WL 3894126 (N.D.Ill. Sept. 30, 2010), owners of rental housing projects sued the Illinois Housing Development Authority for breach of contract. The language in the contract of one of the owners stated, "[u]pon request from the Owner to [IHDA] Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 888 and this Contract." The district court in *Greenleaf* construed this provision as a condition precedent to the Illinois Housing Development Authority's performance under the contract. 2010 WL 3894126 at *5.

This Court concludes, as the courts did in *Haddon Housing* and *Greenleaf*, that the language stating that contract rents will be adjusted on the anniversary date of the contract "upon request from the Owner" requires that West Park request such rent increases from the South Dakota Housing Development Authority as a condition precedent to receiving such increases. *See AIG Centennial Ins. Co. v. Fraley-Landers*, 450 F.3d 761, 763 (8th Cir. 2006) ("Unlike a mere contract term, the breach of which must be material before it excuses another party from performing, one party's failure to fulfill a condition precedent entirely excuses any remaining obligations of the other party.").

Like the Plaintiffs in this action, one of the owners in the 2010 *Greenleaf* decision argued that strict compliance with this condition precedent was not required because the Illinois Housing Development Authority repudiated the Housing Assistance Payments Contract by complying with the 1994 Amendments and HUD Notice 95-12. Like the Plaintiffs in this action, the owner in *Greenleaf*,

in making this argument relied on Court of Federal Claims' decisions. In rejecting this argument the district court distinguished those cases on the basis that they were premised on the fact that the Housing Assistance Payments Contracts provided for automatic annual adjustments of contract rents, a provision that was lacking in the Greenleaf contract. *Id.* at *5. The automatic annual adjustments provision is likewise lacking in West Park's Housing Assistance Payments Contract. This Court, for the same reasons as those stated in the *Greenleaf* decision, rejects West Park's argument that the condition precedent is excused based on repudiation of the Housing Assistance Payments Contract.

West Park submitted requests for rent increases in 1995 and 1996 and these rent increases were granted. According to the affidavit of West Park's General partner (Doc. 97), West Park submitted a request for a rent increase in April 2000, and this request was denied. West Park then submitted a request for a rent increase to the South Dakota Housing Authority in 2006, and this request was approved effective January1, 2007. West Park's General partner contends that it would have been futile to request a rent increase during the years 2001 through 2008 because under the South Dakota Housing Authority's procedures the request would have been denied because the pre-adjustment contract rent was greater than the adjusted comparable rent. West Park's General Partner further contended in his affidavit that he believed it was futile to submit a request for a rent increase for the years in issue based on his knowledge of the South Dakota Housing Authority's Procedures, the denial of Wet Park's requests in 1995 and 2000, and based on his substantial experience with other Section 8 projects. While the General Partner may have determined that he did not want to spend the $2,500 to $3,000 for a rent comparability study when the chances of getting a rent increase appeared unlikely, he has not set forth facts which support an inference of futility. In fact, the approval of West Park's 2006 request refutes such an inference.

In June of 2010 West Park submitted to the South Dakota Housing Authority a request for a rent increase retroactive to January 3, 2001, and to June 1 for the years 2001 through 2010. The South Dakota Housing Authority contends that West Park is precluded from recovering retroactive rent increases for the years in issue. The Court agrees.

In *Acacia Villa v. United States,* 36 Fed. Cl. 277 (1996), the Court of Federal Claims examined a situation in which HUD sought to retroactively limit rent increases sought by the plaintiff under the overall limitation clause. In *Acacia Villa* Judge Andewelt concluded that for a series of reasons, such

13

retroactive suits were not warranted. First, the court stated that the essential thrust of the language of the contract obligated HUD to grant rent adjustments annually and automatically on the contract anniversary date. Second, Judge Andewelt stated that allowing retroactive suits would undermine the method the contract established for calculating yearly rent adjustments based on a mathematical relationship between one year's rent and the next year's rent. Judge Andewelt further reasoned that allowing HUD to bring retroactive suits would allow HUD, without any significant disadvantage, to willfully ignore and render essentially meaningless the contractual mandate to adjust rents yearly. 36 Fed. Cl. at 281.

Judge Andewelt in *Acacia Villa* observed that the availability of retroactive suits was contrary to HUD's contemporaneous interpretation of the HAP contracts contained in an internal 1980 HUD memorandum which opined that retroactive correction should be precluded. 36 Fed. Cl. at 282. Judge Andewelt also observed that retroactive suits would have the undesired effect of producing an atypical business relationship between landlords and tenants that could create long-lasting uncertainty as to rent obligations. *Id.*

The Court acknowledges that the situation in *Acacia Villa* differs from the situation in this case. In *Acacia Villa* HUD was retroactively seeking to satisfy its obligation of conducting a comparability study in order to invoke the overall limitation clause in their HAP contracts. In this case, West Park is retroactively seeking to satisfy the condition precedent to their receiving rent adjustments--making a request for such adjustments. The principles of *Acacia Villa* still provide support for disallowing West Park from retroactively seeking rent increases. More on point with the situation at hand, however, was the situation presented in the case of *Greenleaf L.P. v. Illinois Hous. Dev. Auth.*, 2010 WL 3894126 (N.D.Ill. Sept. 30, 2010).

In *Greenleaf*, Green Leaf Limited Partnership, one of the two Illinois Limited Partnerships that sued the Illinois Housing Development Authority for breach of a Housing Assistance Payments Contract, was subject to a 1981 contractual provision that stated: "Upon request from the Owner to Illinois Housing Development Authority Contract rents will be adjusted on the anniversary date of the Contract in accordance with 24 C.F.R. Part 88 and this Contract."[5] *Id.* at *2. Green Leaf requested

---

[5] 24 C.F.R. Part 888 provides for the use of published Adjustment Factors for the appropriate market area to compute adjustments to Housing Assistance Payments Contract rent.

a rent increase in 2002, but did not request another rent increase until February 2010, at which time it requested a retroactive rent increase for the years 2003 through 2009.

Greenleaf argued that it had met its condition precedent by submitting the retroactive request. In rejecting this argument the district court explained:

> While the [contractual] provision does not specify any time by which a rent increase request must be submitted, it does provide that if Greenleaf meets the condition precedent "Contract Rents will be adjusted on the anniversary day of the Contract ...." (R. 27, Ex. 1 § 2.7(b)(1).) Thus, the "essential thrust" of the provision is to provide rent adjustments annually on the contract anniversary date. *C.f. Acacia Villa v. United States*, 36 Fed. Cl. 277, 281 (1996).

*Greenleaf L.P. v. Illinois Hous. Dev. Auth.*, 2010 WL 3894126 at \*5.

West Park's Housing Assistance Payments Contract provides in Section 2.7(b)(1): "Upon request from the Owner to the [South Dakota Housing Authority] Contract Rents will be adjusted on the anniversary date of the Contract, in accordance with 24 CFR Part 888 and this Contract." This language is virtually identical to the contractual provision in the *Greenleaf* case, and the "essential thrust" of the provision in the West Park contract is likewise to provide rent adjustments annually on the contract anniversary date. Permitting West Park to retroactively fulfill a condition precedent to receiving rent increases runs counter to the requirements of the contract. In addition, allowing a retroactive suit in a case involving a contract like the West Park contract where the contract language clearly requires the owner to request the rent adjustments and specifies that the adjustments occur on the anniversary date of the contract would create an atypical business relationship between landlords and tenants and uncertainty as to rent obligations. *See Acacia Villa v. United States*, 36 Fed. Cl. at 282. West Park is not entitled to retroactive relief. South Dakota Housing Authority is entitled to summary judgment on the issue of whether West Park's contract was breached by the 1994 Amendment shifting the burden to the landlord to prove entitlement to annual rent increases.

## II.
## WHETHER THE OVERALL LIMITATION PROVISION OPERATES TO LIMIT SOUTH DAKOTA HOUSING DEVELOPMENT AUTHORITY'S DAMAGES?

Whether South Dakota Housing Authority could invoke the overall limitation defense is the basis of the motions for partial summary judgment. Doc. 73, 74. The overall limitation clause in the

housing assistance payment contracts prohibits increases that would result in rents being materially higher than the rents for comparable unassisted units. South Dakota Housing Authority contends that disregarding this limitation would improperly put Plaintiffs in a better position than if no breach had occurred. South Dakota Housing Authority further maintains it is entitled to show that, even had the burden of raising the overall limitation remained on it rather than being shifted to the Plaintiffs, the limitation would have applied because the market rents for comparable unassisted units would have precluded some or all of the rent increases at issue.

South Dakota Housing Authority urges this Court to follow the decision in *Statesman II Apartments, Inc. v. United States*, 71 Fed. Cl. 662, 666-67 (2006). Judge Lettow of the Court of Federal Claims in *Statesmen* held that to disallow HUD to invoke the overall limitation clause would ignore the purpose of expectancy damages and would reduce the overall limitation provisions to a nullity. Judge Lettow then undertook the task of determining how HUD would have applied the overall limitation clause absent the 1994 amendments to 42 U.S.C. § 1437f(c)(2)(A). 71 Fed. Cl. at 667.

This Court, however, finds more persuasive later cases which have disallowed the overall limitation clause to limit damages for breach of Housing Assistance Payments Contracts. In *Park Props. Assocs., L.P. v. United States*, 82 Fed. Cl. 162 (2008), Judge Allegra of the Court of Federal Claims declined to follow the 2006 *Statesman II* decision with regard to the holding on the role of the overall limitation clause to limit breach of contract damages. Judge Allegra, in reaching a different conclusion, focused on the Court of Federal Claims' repeated holdings that the original overall limitation was not self-effectuating. 82 Fed. Cl. at 174. Judge Allegra also observed that the 2006 *Statesman II* decision did not consider whether it was foreseeable that the overall limitation clause actually would have been invoked had Congress not repudiated the original Housing Assistance Payments Contracts. In Judge Allegra's view, this foreseeability consideration was a "precondition to applying the overall limitation clause again because that clause was not an absolute limitation, but had to be invoked by HUD." 82 Fed. Cl. at 175. Judge Allegra also considered the Supreme Court's characterization of the overall limitation clause in *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 19 (1993). In that case the Supreme Court stated that the overall limitation clause was to be invoked "only in those presumably exceptional cases where the Secretary [of HUD] has reason to suspect that

16

the adjustment factors are resulting in materially inflated rents that a comparability study would ensue." Judge Allegra concluded that the effect of the repudiation of the rent adjustment mechanism in the Housing Assistance Payments Contracts operated to deprive the overall limitation clause of any continuing vitality.[6] 82 Fed. Cl. at 176.

In the 2009 decision of *Greenleaf Ltd. P'ship. v. Illinois Hous. Dev. Auth.*, 2009 WL 5166225 (N.D.Ill.,2009), the district court held that the Illinois Housing agency was unable to employ the overall limitation clause in the housing assistance agreement to limit damages from the breach of that agreement. In reaching that holding the district court observed that the 1994 Amendments did not expressly repeal the 1987 Amendments that in relevant part provided "[i]f the Secretary or appropriate state agency does not complete and submit to the owner a comparability study not later than 60 days before the anniversary date of the assistance contract under this section, the automatic annual adjustment factor shall be applied." The district court then rejected a repeal by implication since such repeals are not favored and the district court found that the amendments were not irreconcilable. 2009 WL 5166225 at *4.; *see also, United States v. Santee Sioux Tribe of Nebraska*, 324 F.3d 607, 611 (8th Cir. 2003)(citing *Morton v. Mancari*, 417 U.S. 535, 550 (1974) ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable").

The district court in *Greenleaf*, after concluding that the Overall Limitation Clause was not self-effectuating, further concluded, "Moreover, it is precisely because the Overall Limitation Clause is not self-effectuating that the Court cannot now ascertain how it would have applied in this case." 2009 WL 5166225 at *7. The district court in *Greenleaf*, like Judge Allegra in *Park Properties*, then

---

[6]Although Judge Allegra also relied on the prevention doctrine in reaching his conclusion, that doctrine does not apply where as in the case at hand, the defendant is not HUD, but rather, a state housing agency, which is merely implementing procedures under a HUD regulation. *See Greenleaf Ltd .P'ship. v. Illinois Hous. Dev. Auth.*, 2009 WL 5166225 at *6 n.3 (N.D.Ill. 2009).

In addition to the prevention doctrine not applying to the case at hand, the impracticability defense set forth in Restatement 2d of Contracts §§ 261, 264 (1981), does not apply when a regulatory body is attempting to change the playing field of a program in which its own agents have become contractually bound to third parties. *See One and Ken Valley Hous. Group v. Maine State Hous. Auth.*, 2010 WL 4191488 at *13 n.9 (D. Me. October 19, 2010).

relied on the Supreme Court's explanation in *Cisneros v. Alpine Ridge Group*, that the performance of comparability studies were the exception rather than the rule, and barred the Illinois Housing Development Authority from invoking the Overall Limitations Clause to limit any damages that may be awarded for breach of contract for the years when the Housing Authority did not submit comparability studies in compliance with the 1987 Amendments. 2009 WL 5166225 at *7. For the reasons stated by Judge Allegra and the district court in *Greenleaf*, this Court concludes that the South Dakota Housing Development Authority cannot invoke the Overall Limitation Clause to limit its damages for breach of contract in the case at hand. Plaintiffs' motion for partial summary judgment is granted.

### III.
### WHETHER CLAIMS WITHIN THE SIX-YEAR STATUTE OF LIMITATIONS PERIOD INCLUDE RENT ADJUSTMENTS DURING THE SIX-YEAR PERIOD WHICH RELATE TO AN ANNIVERSARY DATE OUTSIDE THE SIX-YEAR LIMITATIONS PERIOD?

The statute of limitations for breach of contract under South Dakota law is six years. S.D.C.L. § 15-2-13. The anniversary date of the Cathedral Square Contract is July 1. The anniversary date of the Western Heights Contract is November 1. The anniversary date of the Riverview Contract is June 1. The original Complaint in this action was filed on January 3, 2007. There is a period of several months with respect to each of the Housing Assistance Payments Contracts that is within the six-year statue of limitation period but that is before the first contract anniversary date that is within the six-year limitation period. Defendant contends that Plaintiffs' claims for adjustments for these periods are barred because they relate back to an anniversary date that is outside the six-year limitation period. In resisting this contention Plaintiffs rely upon cases from the Unites States Court of Federal Claims which considered contracts entered into after the 1994 amendments to the Section 8 Program..

In *Pennsauken Senior Towers Urban Renewal Assocs. v. United States*, 83 Fed. Cl. 623 (2008), the owner of a Section 8 project filed its complaint on September 4, 2007, for a breach of its Housing Assistance Payments contract for the failure to provide automatic annual rent increases under the contract. The anniversary date of the contract was March 17. The contract in issue in *Pennsauken* provided for annual adjustments "[u]pon request from the Owner" to the Contract Administrator and that "Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24

18

CFR [Part] 888 and this Contract ... ." 83 Fed. Cl. at 625. Judge Lettow in the *Pennsauken* case concluded that he was unable to determine on face of the contract and 24 C.F.R. § 888.203 whether monthly rent adjustments could be made during an anniversary year or solely at the outset of the anniversary year. Judge Lettow then looked at HUD Notice 95-12 to determine whether the owner could claim rent adjustments for a portion of a particular anniversary year after the anniversary date of that year. HUD Notice 95-12 provides that if an owner fails to request an adjustment before the anniversary date, HUD will still permit the rent adjustment to occur after the submission of the necessary information, if that information is submitted before the next anniversary date. *See* Notice 95-12 at 3, cited at 83 Fed. Cl. at 629. Judge Lettow concluded, "As to the jurisdictional issue now before the court, the very fact that HUD advised that it could and would grant post-anniversary-date requests for rent adjustments satisfies the court that [the owner] can claim rent adjustments for a portion of a particular anniversary year after the anniversary date of that year." 83 Fed. Cl. at 629.

In *Ocean View Towers Assocs. Ltd. P'ship v. United States*, 88 Fed. Cl. 169 (2009), Judge Lettow again held breach of contract claims against HUD for failure to adjust rent payments under Housing Assistance Payment Contracts accrued, under the six-year statute of limitations applicable to Tucker Act claims, on the date that HUD failed to grant the rent adjustments, rather than on the contract anniversary date because HUD was authorized to adjust rents more frequently than solely on an annual basis. The contract in *Ocean View Towers* differed from the one in *Pennsauken* in that the contract in *Ocean View Towers* did not expressly incorporate 24 C.F.R. § 888.203 as part of the contract. Judge Lettow concluded that the fact that there was no express incorporation of 24 C.F.R. § 888.203 in the contract did not yield a different result than the one in *Pennsauken* because of the "well settled legal principle that '[l]aws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms.'" 88 Fed. Cl. at 176 (quoting *Norfolk & W. Ry. Co. v. American Train Dispatchers Ass'n*, 499 U.S. 117, 130 (1991)).

42 U.S.C. § 1437f(2)(A) provides in part: "The assistance contract shall provide for adjustment annually *or more frequently* in the maximum monthly rents for units covered by the contract to reflect changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units or, if the Secretary determines, on the basis of a reasonable formula."(emphasis added).

Cathedral Square, Western Heights and Riverview Contract all provide for "Special Additional Adjustments" beyond the Automatic Annual Adjustments which are to take place on the anniversary date of the Contract. These special additional adjustments are to occur when the Owner is not adequately compensated by automatic annual adjustments. The Second Amended Complaint alleges a breach of contract for the South Dakota Housing Authority's alleged "failure to increase the Contract Rents at Plaintiffs' projects in accordance with the terms of Plaintiffs' HAP Contracts since HUD issued Notice 95-12." Par. 79 of the Second Amended Complaint. Doc 38. Based on the contract language and applicable law, Plaintiffs are not barred from pursuing rent adjustments due them during the six-year statute of limitations period which relate to an anniversary date outside the six-year limitations period.

## IV.

### WHETHER THE .01 REDUCTION OF THE ANNUAL ADJUSTMENT FACTOR FOR NON-TURNOVER UNITS CONSTITUTES A BREACH OF PLAINTIFFS' HOUSING ASSISTANCE PAYMENTS CONTRACTS?

The 1994 amendments to the Section 8 program reduced by one percent the annual adjustment factor for units occupied by the same tenant during the previous year. The Housing Assistance Payments Contracts for Cathedral Square, Western Heights and Riverview provide: "Automatic Annual Adjustment Factors will be determined by the Government at least annually . . . and the basis for their determination will be published in the Federal Register."[7] Plaintiffs argue that implementing the one percent reduction in the annual adjustment factor for units occupied by the same tenant during the previous year as provided in the 1994 amendments and Notice 95-12 breached the provision in Plaintiffs' Housing Assistance Payments Contracts requiring that the basis for the determination of the annual adjustment factors be published in the Federal Register. Plaintiffs further argue that this provision requires factual findings to support the reduction be published in the Federal Register, and that the .01 reduction for non-turnover units is not "a reasonable formula" as is required by 42 U.S.C.

---

[7]West Park's contract references 24 C.F.R. § 888. Although 24 C.F.R. § 888.202 requires that adjustment factors be published in the Federal Register, no reference is made in this regulation to publishing the basis for the determination of the adjustment factors.

20

§ 1437f(c)(2)(A).[8]

In support of their position, Plaintiffs rely on *Statesman II Apartments, Inc. v. United States,*
66 Fed. Cl. 608 (2005). The plaintiffs in *Statesman II* were landlords who brought an action against
HUD alleging, in part, that implementing the one percent reduction in the annual adjustment factors
in accordance with the 1994 amendments resulted in a breach of the Housing Assistance Payments
Contracts entered into between the landlords and HUD. That contract provided that automatic annual
adjustment factors and "the basis for their determination will be published in the Federal Register."
Judge Lettow of the Court of Federal Claims noted that the contract did not expressly provide that
HUD could establish different automatic annual adjustment factors based on the turnover of a dwelling
unit. Judge Lettow also noted that HUD had not published any findings correlating the one-percent
reduction to an owner's costs and expenses associated with turnover, but had "merely adopted the
statutory reduction introduced by the 1994 amendments." 66 Fed. Cl. at 625. Judge Lettow in
*Statesman II* explained that the 1994 amended statute did not contain findings regarding turnover costs
and that the parties had not cited to any pertinent legislative history on that subject. Judge Lettow
concluded, "In these circumstances, the statutory amendment, standing alone, cannot trump a binding
contract entered by the government and a private party some years before the amendment was
enacted." 66 Fed. Cl. at 625.

Another judge from the Court of Federal Claims, however, has held contrary to Judge
Lettow's holding in *Statesman II*, regarding whether the statutory one percent reduction in the
automatic annual adjustment factors for non-turnover units constituted a breach of the Housing
Assistance Payments Contracts considered in those cases. In *Cuyahoga Metro. Hous. Auth. v. United
States,* 65 Fed. Cl. 534 (Fed. Cl. 2005), which was issued about one and one-half months before the
decision in *Statesman II*, Judge Allegra of the Court of Federal Claims issued the second decision

---

[8]42 U.S.C. § 1437f(c)(2)(A) provides in pertinent part:

   The assistance contract shall provide for adjustment annually or more frequently in
the maximum monthly rents for units covered by the contract to reflect changes in the
fair market rentals established in the housing area for similar types and sizes of
dwelling units or, if the Secretary determines, *on the basis of a reasonable formula.*
 . . . . (Emphasis added).

21

interpreting contracts entered into between Cuyahoga Metropolitan Housing Authority and HUD. These contracts, like the contracts in the case at hand, had a provision that the automatic annual adjustment factors "and the basis for their determination" would be published in the Federal Register. Judge Allegra concluded that there was nothing in the language of these Housing Assistance Payments Contracts that "suggests that there will be a single, monolithic factor for all units at a given property or that Congress could not authorize HUD, in determining the [automatic annual adjustment factor] for a given unit, to make a different adjustments for those in which no turnover had occurred." 65 Fed. Cl. at 542. Judge Allegra held that there was no indication that the statutory 1-percent deduction constituted the abrogation of any right or obligation set forth in the Housing Assistance Payments Contracts.

In *Park Props. Assoc., L.P. v. United States,* 74 Fed. Cl. 264 (Fed. Cl. 2006), Judge Allegra of the Court of Federal Claims closely examined the holding of *Statesman II* regarding whether the statutory one percent reduction in the automatic annual adjustment factors for non-turnover units constituted a breach of Housing Assistance Payments Contracts containing language virtually identical to that found in the contracts involving Cathedral Square, Western Heights and Riverview. In this *Park Properties* decision Judge Allegra opined that the *Statesman II* opinion "overreads that portion of the contract which requires HUD to publish in the Federal Register 'the basis for their determination' of the adjustment factor." 74 Fed. Cl. at 275. Judge Allegra reasoned that the contract permitted HUD to describe the basis for its determination in either factual or legal terms, and that HUD had described its basis in legal terms by indicating that the basis for the lower automatic annual adjustment factors for non-turnover units was the 1994 amendments. *Id.* Judge Allegra elaborated as follows:

> Certainly, nothing in the contracts explicitly precludes HUD from citing, as the basis for a rate determination, legislation that effected a modification of the adjustment factors, provided that the law did not repudiate or breach the contract. To hold otherwise would be to conclude that the contract anticipated that HUD would periodically publish *ad hoc* factual rationalizations for legislation previously passed by Congress, without any conceivable purpose being served by such a requirement, let alone the studies that would be necessary to meet that mandate.

*Park Props. Assoc., L.P. v. United States,* 74 Fed. Cl. 264, 275 (2006).

Citing to HUD's discussion of the methodology it used to calculate the automatic annual

adjustment factors published in 2009, 74 Fed. Reg. 1230 (Jan. 12, 2009), Plaintiffs argue that the formula used to calculate automatic annual adjustment factors is detailed and attempts to measure any increased costs incurred by projects assisted by Section 8 as precisely as possible. Plaintiffs argue that, in contrast, the .01 reduction for non-turnover units is an across-the-board cut applicable to all projects in the country that makes no attempt to correlate the reduction to costs associated with turnover and was legislation enacted primarily to reduce the overall cost of the Section 8 program. Judge Allegra in *Park Properties* disputes this characterization of the basis of the legislation for .01 reduction for non-turnover units. Judge Allegra noted that the materials submitted to Congress in support of the legislation explained that the reduction provision was "[b]ased on the rationale that operating costs are less if tenant turnover is less." 74 Fed. Cl. at 276 (quoting Department of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations for 1995, Hearings Before a Subcomm. of the H. Comm. on Appropriations, 103d Cong., 2d Sess. 591 (1994) (HUD, "Congressional Justifications for 1995 Estimates") (March 1994)).

Judge Allegra in *Park Properties* also cited a HUD reported that was submitted in support of the legislation for .01 reduction for non-turnover units. This report stated in part,

> Because the cost to owners of turnover-related vacancies, maintenance, and marketing are lower for long-term stable tenants, these tenants are typically charged less than recent movers in the unassisted market. Since HUD pays the full amount of any rent increases for assisted tenants in section 8 projects and under the Certificate program, HUD should expect to benefit from this "tenure discount." Turnover is lower in assisted properties than in the unassisted market, so the effect of the current inconsistency with market-based rent increases is exacerbated.

*Park Properties,* 74 Fed. Cl. at 276 (citing HUD Explanation and Justification for the Housing Choice and Community Investment Act of 1994). Judge Allegra, noting that this legislative history was apparently not presented in *Statesman* II, concluded, that even if HUD could be viewed as having failed to publish the basis for its determination in the Federal Registrar, one could not surmise that the result would be a breach of contract that, in terms of damages, would preclude the one-percent reduction altogether. *Id.* The challenge to the .01 reduction to non-turnover units amounts to a challenge to that legislation. *Park Properties* at 274-76 shows that the legislative history provides adequate factual basis for the .01 legislation.

In *Greenleaf Ltd. P'ship v. Illinois Hous. Dev. Auth.*, 2010 WL 3894126 (N.D.Ill.,Sept. 30,

2010), the district court interpreted two different contracts between landlords and the Illinois Housing Development Authority. One contract, the Sanford contract, provided that the automatic annual adjustment factors "and the basis for their determination will be published in the Federal Register." The landlord in that contract contended that HUD provided no basis for the .01 reduction and that the contract had therefore been breached. The district court considered the split decisions from the Court of Federal Claims and adopted the reasoning in *Cuyahoga Metro. Hous. Auth. v. United States*, 65 Fed. Cl. 534 (2005), and *Park Properties Assoc., L.P. v. United States*, 74 Fed. Cl. 264 (Fed. Cl. 2006). The district court in *Greenleaf* explained, however, that even if it were to adopt the analysis in *Statesman II* by concluding that HUD had not published a sufficient basis to support the .01 reduction for non-turnover unit, it still would not conclude that the Illinois Housing Development Authority, which the district court distinguished from HUD, had breached the contract. The district court explained:

> In Statesman II, HUD was a party to the HAP Contract at issue, so its failure to provide proper factual findings could support a claim for breach of contract. Here, the Contract states that "Automatic Annual Adjustment Factors will be determined by the Government at least annually.... Such Factors and the basis for their determination will be published in the Federal Register.... This language does not impose a contractual duty on [the Illinois Housing Development Authority], it simply states that "the Government" (HUD) will publish Adjustment Factors and the basis for those factors in the Federal Register. The Illinois Housing Development Authority complied with its obligations under the Sandburg Contract by adjusting the Contract Rents on the basis of the applicable Adjustment Factors.

*Greenleaf Ltd. P'ship v. Illinois Hous. Dev. Auth.*, 2010 WL 3894126 at *7.

The other contract in *Greenleaf*, the Greenleaf contract, did not require that the automatic annual adjustment factors, and the basis for their determination, be published in the Federal Register. That contract, like the West Park contract in this case, required that Contract Rents "be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 888 and this Contract." The plaintiffs argued that § 1437f(c)(2)(A)'s requirement that rents be adjusted "annually or more frequently" based on changes "in the fair market rentals" or "on the basis of a reasonable formula" had been violated. In rejecting this argument the district court characterized the argument as providing no basis for a breach of contract by the Illinois Housing Development Authority, but rather, a

24

challenge to a legislative classification. The district court explained that while the statute and regulations may have required the automatic annual adjustment factors to be generally "reasonable," the Greenleaf contract did not make the Illinois Housing Development Authority responsible for the classification of the units or for the adjustment factors themselves. *Greenleaf Ltd. P'ship v. Illinois Hous. Dev. Auth.*, 2010 WL 3894126 at *7.

This Court finds the reasoning set forth in *Cuyahoga II, Park Properties, and Greenleaf* persuasive, adopts the same, and concludes that the one percent reduction in automatic annual adjustment factors for non-turnover units is not a breach of the contracts entered into in the case at hand. The South Dakota Housing Authority is entitled to summary judgment on this cause of action.

## V.
## WHETHER PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT FOR THE COST OF RENT COMPARABILITY STUDIES?

In their Second Amended Complaint Plaintiffs allege a breach of contract because they were required to submit rent comparability studies when no provision of their Housing Assistance Payment Contracts required them to submit such a study. Plaintiffs seeks reimbursement for the cost of comparability studies conducted within the six-year limitation period. However, Plaintiffs have not submitted any evidence that they submitted any comparability studies within the six-year limitation period.

Judge Lettow in ruling on damages in *Statesman II Apts., Inc. v. United States,* 71 Fed. Cl. 662, 670 (2006), determined that comparability studies are reimbursable "regardless whether the studies were performed contemporaneously with the time period for which damages are sought." This Court concludes as a general matter that costs for those comparability studies that Plaintiffs may have conducted within the statute of limitations would be reimbursable as damages. But the Court has not been presented with sufficient evidence to grant summary judgment on this matter.

In conclusion, and in accordance with this memorandum opinion,

IT IS ORDERED:

1. That Plaintiffs' Motion for Partial Summary Judgment (Doc. 73) is granted and Defendant's Motion for Partial Summary Judgment (Doc. 74) is denied;

2. That Plaintiffs Cathedral Square Partners Limited Partnership, 46th Street Partners Limited

Partnership, and Riverview Park, Ltd. are entitled to summary judgment on the issue of whether their Housing Assistance Payments Contracts were breached by the shifting of the burden to the landlord to prove entitlement to annual rent increases and Defendant is denied summary judgment on this issue with regard to these Plaintiffs;

3. That Defendant South Dakota Housing Authority is entitled to summary judgment on the issue of whether West Park's contract was breached by the 1994 Amendment shifting the burden to the landlord to prove entitlement to annual rent increases, and Plaintiff West Park Ltd. is denied summary judgment on this issue;

4. That South Dakota Housing Authority is entitled to summary judgment on the cause of action contending the .01 reduction of the annual adjustment factor for non-turnover units constitutes a breach of Plaintiffs' housing assistance payments contracts, and Plaintiffs are denied summary judgment on this claim;

5. That neither Defendant nor Plaintiffs are entitled to summary judgment on the claim for damages for comparability studies;

6. That Claims within the six-year statute of limitations period include rent adjustments during the six-year period which relate to an anniversary date outside the six-year limitations period; and

7. That the parties shall file a joint status report within 20 days of the date of this Memorandum Opinion setting forth a proposed schedule regarding settlement or a trial on damages and a summary of how the parties believe the case should now proceed.

Dated this 5th day of January, 2011.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: Colleen Schulte
Deputy