

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| CATHEDRAL SQUARE PARTNERS LIMITED PARTNERSHIP; WEST PARK LTD.; 46th STREET PARTNERS LIMITED PARTNERSHIP; and RIVERVIEW PARK, LTD., | \* \* \* \* \* \* | CIV 07-4001 |
| Plaintiffs, | \* \* \* | MEMORANDUM OPINION AND ORDER RE: MOTIONS FOR RECONSIDERATION AND |
| vs. | \* \* | MOTION FOR PROSPECTIVE RELIEF |
| SOUTH DAKOTA HOUSING DEVELOPMENT AUTHORITY, | \* \* \* | |
| Defendant. | \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

After the Court issued is Memorandum Opinion and Order regarding the parties' motions for partial summary judgment and summary judgment (Doc. 106), the parties moved pursuant to Fed. R. Civ. P. 53(c) for a declaratory judgment stating the parties' prospective rights and obligations under their Housing Assistance Payments contracts in accordance with the Court's rulings in the Summary Judgment Memorandum Opinion. Doc. 116. Plaintiff West Park, Ltd. then moved for reconsideration of the Summary Judgment Memorandum Opinion ( Doc. 118 ) and also submitted a notice of supplemental authority regarding a United States Court of Federal Claims decision addressing the same issues raised by Plaintiff West Park, Ltd. in its motion for reconsideration. Doc. 124. Defendant South Dakota Housing Authority then submitted a notice of supplemental authority and motion for reconsideration regarding this Court's March 30, 2009 decision granting the motion of the United States Department of Housing and Urban Development (HUD) to dismiss South Dakota Housing Authority's third-party complaint in this action. Doc. 127. HUD responded to the motion for reconsideration on the dismissal of South Dakota Housing Authority's third-party complaint stating it does not oppose reconsideration of the Court's order dismissing the third-party complaint with regard to the breach of contract claim, but opposes reconsideration of the dismissal of the APA and Declaratory Judgment claims.

## WEST PARK'S MOTION FOR RECONSIDERATION

In the Summary Judgment Memorandum Opinion this Court held that Plaintiffs Cathedral Square Partners Limited Partnership, 46th Street Partners Limited Partnership, and Riverview Park, Ltd. were entitled to summary judgment on the issue of whether their Housing Assistance Payments Contracts were breached by the shifting of the burden to the landlord to prove entitlement to annual rent increases. This Court in its Summary Judgment Memorandum Opinion notes, however, that the Housing Assistance Payments Contract with Plaintiff West Park, differs from the contracts with the other plaintiffs in that the rent adjustments provision in the West Park contract is not characterized as "automatic," and provides that "[u]pon request from the Owner to [South Dakota Housing Development Authority] Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 CFR Part 8884 and this Contract." This Court concluded in its Summary Judgment Memorandum Opinion that the "upon request from the Owner" language in the West Park contract operated as a condition precedent to receiving the rent increases.

This Court in its Summary Judgment Memorandum Opinion rejected West park's arguments that strict compliance with the condition precedent was not required because the South Dakota Housing Development repudiated the Housing Assistance Payments Contract and because it was futile to submit a request for a rent increase for the years in issue based on the South Dakota Housing Authority's Procedures, the denial of West Park's requests in 1995 and 2000, and West Park's General Partner's substantial experience with other Section 8 projects. In rejecting the futility argument this Court stated:

> While the General Partner may have determined that he did not want to spend the $2,500 to $3,000 for a rent comparability study when the chances of getting a rent increase appeared unlikely, he has not set forth facts which support an inference of futility. In fact, the approval of West Park's 2006 request refutes such an inference.

Doc. 106 at p. 13; *Cathedral Square Partners L.P. v. South Dakota Hous. Dev. Auth.*, 2011 WL 43019, at *9 (D.S.D. Jan. 5, 2011).

Lewis F. Weinberg, the General Partner of West Park, provided an affidavit dated December 10, 2009, in which he stated in paragraph 7: "SDHDA did approve a rent increase at West Park Apartments effective January 1, 2007. This is the only rent increase at West Park Apartment approved by SDHDA since 1996." Doc. 80. Mr. Weinberg also provided a second declaration, dated

2

June 25, 2010, in which he stated, "In 2006, I submitted to SDHDA a budget-based request for a rent increase at West Park. SDHDA approved this request effective January 1, 2007. This is the only rent increase approved by SDHDA at West Park since 2000." Doc. 97.

Although the pleadings submitted prior to the Court issuing its Summary Judgment Memorandum Opinion did not elaborate on the significance that the 2006 request for a rent increase was "budget-based,"[1] West Park's motion for reconsideration explains that "[a] budget-based rent increase is completely different than, and is not a substitute for, annual rent increases using the automatic annual adjustment factors ("AAAFs") published by the Department of Housing and Urban Development." West Park further explained that the budget-based rent increase was granted by South Dakota Housing Authority as a one-time adjustment. Doc. 118.

After moving for reconsideration, West Park later gave notice of a United States Court of Federal Claims decision, *Haddon Hous. Assocs., LLC v. United States*, 99 Fed.Cl. 311 (2011), to supplement its motion for reconsideration. This decision was issued after West Park moved for reconsideration. In this Court's memorandum opinion, this Court relied in part upon the earlier summary judgment opinion in the *Haddon Housing* case in deciding that the "upon request from the Owner" language in the West Park contract as well as the other facts surrounding that contract precluded West Park from recovering adjustments of contract rents based on the failure to comply with the condition precedent. In the memorandum opinion this Court relied as follows upon the reasoning in the summary judgment opinion in the Haddon Housing case:

> In *Haddon Hous. Assocs., LLC v. United States*, 92 Fed.Cl. 8, 19 (2010), Judge Lettow in the Court of Federal Claims examined an argument similar to ones advocated by Plaintiffs in a case involving contractual language similar to that found in West Park's contract. Judge Lettow found, in applying the basic rules of contract interpretation, that the plaintiff lessor of a low-income rental housing project was required pursuant to the terms of its housing assistance payments contract to request a rent increase as a condition precedent to receiving such increase. 92 Fed. Cl. at 19. Judge Lettow found that "[o]n its face, the HAP Contract appears to require plaintiffs to request rent increases." *Id.* Judge Lettow concluded that such a requirement was

---

[1] Plaintiffs' Statement of Undisputed Material Facts in support of their motion for summary judgment merely states: "Defendant approved an increase in the rents at West Park Apartments effective January 1, 2007. Weinberg Dec. ¶ 6. This is the only rent increase at West Park approved by Defendant since 1996. *Id.*" Doc. 92, par. 6.

3

>   not necessarily inconsistent with the regulations which refer to "Automatic Annual Adjustment Factors." *Id.* In so concluding, Judge Lettow reasoned that "[a] contract could require one party to request a rent adjustment that was then applied according to automatic adjustment factors." *Id.* In the *Haddon Housing* case, however, the defendant's motion for summary judgment was denied because questions of material fact existed as to whether the plaintiff had made a request for the rent increases in issue. *Id.*

*Cathedral Square Partners*, 2011 WL 43019 at *8.[2]

After denying cross-motions for summary judgment and conducting a three-day trial, and considering post-trial briefing and closing arguments from the parties in the *Haddon Housing* case, Judge Lettow from the United States Court of Federal Claims issued a decision in which he held that the owners of a rental housing facility's failure to fulfill the condition precedent of a Section 8 contract by submitting rent requests to HUD was excused under the doctrine of prevention. 99 Fed.Cl. 311 (2011). Judge Lettow advised in this decision that it was the first instance in which the United States Court of Federal Claims had occasion to determine whether there had been a breach of a new-form Housing Assistance Payment Contracts, "which differed in a significant respect from the old-form" contract in that it included the provision that "upon request from the Owner to the C[ontract] A[dministrator], Contract Rents will be adjusted on the anniversary date of the Contract in accordance with 24 C.F.R. [Part] 888 and this Contract." 99 Fed. Cl. at 316-17, 327.

In the *Haddon Housing* case Judge Lettow had to determine whether the plaintiffs' nonperformance of the condition precedent of requesting the rent adjustments was excused when HUD had previously denied the plaintiffs' requests because rent comparability studies had not been provided. The reason provided by the administrator of a rental housing facility for the nonperformance was: "After asking for requests for three years and being denied for three years ... I didn't feel as though if I sent a letter every day they would [grant an adjustment]—[rather] I would receive the same response." 99 Fed.Cl. at 319. Judge Lettow in the *Haddon Housing* case, after conducting a three-day trial and finding that an owner had not submitted a request for the rent increases between 1999 and 2003, determined that this failure was excused under the doctrine of

---

[2]This Court also relied upon *Greenleaf L.P. v. Illinois Hous. Dev. Auth.*, 2010 WL 3894126 (N.D.Ill. Sept. 30, 2010), for its holding, but *Greenleaf* also acknowledges that a condition precedent must be met unless prevented by the other contracting party. *Greenleaf* at *5.

prevention.

In the case at hand, Lewis F. Weinberg, the General Partner of West Park provided the following similar explanation for why he did not submit a request for an automatic annual adjustment factor after his 2000 request for the same was denied:

> I did not, on behalf of West Park, Ltd., submit any request for an AAAF rent increase after my 2000 request was denied because I did not want to spend the time or incur the cost of obtaining a rent comparability study, as required by SDHDA for every AAAF rent increase request, for what I believed would have been an exercise in futility. My belief that it would have been futile to request a rent increase for these years is based on my knowledge of SDHDA's procedures, SDHDA's denial of my 1995 and 2000 requests for a rent increase at West Park and my substantial experience with other Section 8 projects.

Doc. 97, par. 11 (filed June 29, 2010).

"[E]very order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983)(citing Fed. R. Civ. P. 54(b); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478, at 788-792 (1981)). "'The district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment.'" *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007)(quoting *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir.1995)).

In light of the fact that South Dakota Housing Authority does not dispute that the one-time budget-based 2006 request for a rent increase is completely different from annual rent increases using the automatic annual adjustment factors, the approval of West Park's one-time budget-based 2006 request does not refute a claim of futility in requesting annual rent increases. The Court must determine if its earlier mistaken partial reliance upon the 2006 request and grant as well as subsequent developments in the law require a modification of its conclusion in the Summary Judgment Memorandum Opinion that the "upon request from the Owner" language in the West Park contract operated as a condition precedent which could not be excused.

South Dakota Housing Authority argues that the *Haddon Housing* case is inapposite to the issue presented in West Park's motion for reconsideration because Judge Lettow of the Court of

Federal Claims ruled that the plaintiff in that case was excused from submitting rent increase requests based on the doctrine of prevention, not on the futility doctrine advocated by West Park. South Dakota Housing Authority argues that since West Park never previously argued that the doctrine of prevention excused it from requesting rent increases it cannot rely on the prevention doctrine in a motion for reconsideration. South Dakota Housing Authority cites *Capitol Indemnity Corp. v. Russellville Steel Co., Inc.*, 367 F.3d 831, 834 (8th Cir. 2004), for the proposition that a motion for reconsideration is not the occasion to tender new legal theories for the first time.

South Dakota Housing Authority's argument overlooks the fact that the plaintiffs in the *Haddon Housing* case never characterized their argument that their non-compliance with the request requirement should be excused as a doctrine of prevention argument. As Judge Lettow observed:

> Though plaintiffs do not invoke the canon by name, they rely essentially upon the long-established "doctrine of prevention" to excuse their non-performance. Described aptly by Williston, the doctrine provides:
> Where a promisor prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, or to the performance of a return promise, the promisor is not relieved of the obligation to perform.... [I]n such a case, the promisor may not invoke the other party's nonperformance as a defense when sued upon the contract.

*Haddon Hous. Assocs., LLC v. United States*, 99 Fed.Cl. at 330-331.

Restatement (Second) of Contracts § 245 (1981) provides: "Where a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused." *See Baker Group, L.C. v. Burlington N. and Santa Fe Ry. Co.*, 451 F.3d 484, 490 (8th Cir. 2006) (performance of conditions precedent not excused when party offered no evidence that the other party's breach contributed materially to the non-occurrence of the conditions precedent). "In every contract there is an implied covenant of good faith and fair dealing." *Bain v. Champlin Petroleum Co.*, 692 F.2d 43, 47 (8th Cir. 1982), *quoted in Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F.2d 167, 174-75 (8th Cir.1987) (citing South Dakota cases recognizing implied covenant of good faith and fair dealing).

In the *Haddon Housing* case Judge Lettow of the Court of Federal Claims concluded that the government violated its duty of good faith and fair dealing under the contract by unilaterally imposing upon the plaintiffs in that case additional contractual duties not within the terms of the

new-form Housing Assistance Payment contract (i.e., obtaining and presenting a rent comparability study). 99 Fed.Cl. at 332. Judge Lettow found after a trial in the *Haddon Housing* case that the failure to fulfill the condition precedent of submitting rent adjustment requests was excused based on the government's conduct except for one year in issue. In that year Judge Lettow found that the plaintiffs' decision to forego a rent request would have occurred regardless of HUD's prior refusal to grant a rent increase in the absence of the plaintiffs providing a rent comparability study. That being the case Judge Lettow could not find that the government's denials contributed materially to the failure to request a rent increase for that particular year. 99 Fed.Cl. at 333.

In the case at hand, Lewis Weinberg the general partner of West Park has submitted an affidavit stating that rent comparability studies cost approximately $2500-$3000 and that he did not submit any request for an automatic annual adjustment factor because he did not want to spend the time or incur the cost of obtaining a rent comparability study as required by South Dakota Housing Authority for what he believed to be an exercise in futility. A genuine issue of material fact, therefore, exists as to whether the South Dakota Housing Authority's prior refusals to grant a rent increase in the absence of West Park providing a rent comparability study contributed materially to West Park's failure to request a rent increase for the years in issue. For this reason West Park's motion to reconsider will be granted to the extent that South Dakota Housing Authority is not entitled to summary judgment against West Park on the issue of whether the new-form Housing Assistance Payment Contract was breached for failure to provide annual rent adjustments when West Park failed to fulfill the condition precedent of requesting the rent adjustments.

## SOUTH DAKOTA HOUSING AUTHORITY'S MOTION FOR RECONSIDERATION ON DISMISSAL OF ITS THIRD-PARTY COMPLAINT

The South Dakota Housing Authority in requesting that this Court reconsider its decision of March 30, 2009, granting HUD's motion to dismiss South Dakota Housing Authority's third-party complaint in this action.[3] This motion to reconsider was based on the Government's brief before the

---

[3]The South Dakota Housing Authority's motion to reconsider also attached the Court of Appeals of Ohio's decision in *Arlington Hous. Partners, Inc. v. Ohio Housi, Fin. Agency*, 2012 WL 1078835 (Ohio Ct. App. March 30, 2012), "for whatever consideration the Court may conclude [the decision] merits." The case held changes in federal law and HUD regulations

7

Seventh Circuit Court of Appeals in *Greenleaf Ltd. P'ship v. Illinois Hous. Dev. Auth.* (7th Cir. No. 11-1753). In its brief in the *Greenleaf* appeal HUD, at the direction of the Solicitor General, confessed error regarding its position before the district court in requesting dismissal of the third-party complaint against it. HUD contended on appeal that the sue-and-be-sued clause of 42 U.S.C. § 1404a waives sovereign immunity with respect to the third-party claims asserted by the Illinois Housing Development Authority against HUD. In its position on appeal HUD maintained that case law holding that 42 U.S.C. § 1404a and similar sue-and be-sued provisions do not apply unless there is an identifiable source of funds within the exclusive control of the agency and severed from the general funds of the Treasury from to satisfy any judgment is not supported by the language of 42 U.S.C. § 1404a and misconstrues the holding in *FHA v. Burr*, 309 U.S. 242 (1940).

In HUD's response to South Dakota Housing Authority's motion for reconsideration of the dismissal of South Dakota Housing Authority's third-party complaint in this action, HUD concedes that its brief on appeal in the *Greenleaf* case accurately states its present position on the scope of 42 U.S.C. § 1404a and is contrary to its earlier position in moving to dismiss the breach of contract claim in the third-party complaint in this action.[4] HUD further states, however, that it does not support reconsideration of the dismissal of the third-party complaint claims concerning the Administrative Procedure Act and the Declaratory Judgment Act. In its response HUD recognizes that litigants cannot create subject matter jurisdiction by their consent, but asserts that if the Order dismissing the third-party complaint were appealed to the Eighth Circuit HUD would ask the Eighth Circuit to reconsider the holding in *Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 675-76 (8th Cir. 1986), the case relied upon by this Court in granting HUD's motion to dismiss the third-party complaint.

In the March 30, 2009 decision granting HUD's motion to dismiss South Dakota Housing

---

rendered the Ohio Housing Finance Agency's performance of its HUD-approved housing assistance contract with private landlords regarding rent increases excused under the doctrine of impossibility. This Court rejects the reasoning of the Court of Appeals of Ohio as it overlooks the recourse a local housing authority has against HUD for liability incurred by a local housing authority for which liability HUD is responsible.

[4]The docket entries for the *Greenleaf* appeal indicate that the Seventh Circuit has not yet heard oral argument.

8

Authority's third-party complaint in this action this Court concluded that South Dakota Housing Authority's claims fell outside the waivers of sovereign immunity under both the APA and the United States Housing Act of 1937 and thus this Court lacked subject matter jurisdiction over all the claims. Since with regard to the third-party complaint, HUD has changed its position only on the scope of the sue-and-be-sued clause of 42 U.S.C. § 1404a, consideration of the South Dakota Housing Authority's motion to reconsider will be restricted to examining the application of 42 U.S.C. § 1404a.

"The United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941)(internal citations omitted); *see also United States v. Navajo Nation*, 537 U.S. 488, 502 (2003) ( "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite to jurisdiction." ) (quoting *United States v. Mitchell*, 563 U.S. 205, 212 (1983)). The consent to be sued relevant to whether this Court has jurisdiction over the third-party complaint in this case is contained in 42 U.S.C. § 1404a. This statute provides in part that the "Secretary of Housing and Urban Development may sue and be sued only with respect to its functions under the United States Housing Act of 1937, as amended [42 U.S.C.A. § 1437 et seq.].["][5] This Court has an independent obligation to assure itself of jurisdiction even if the parties fail to challenge it. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-231 (1990). In determining whether it has subject matter jurisdiction, this Court is not limited to considering the pleadings, but may consider the complaint, other undisputed facts in the record, and may make its own determination of disputed factual issues that bear on its jurisdiction. *Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635, 637 n.4 (8th Cir. 2003).

In this Court's March 30, 2009 decision granting HUD's motion to dismiss South Dakota Housing Development Authority's third-party complaint, this Court determined that any waiver of sovereign immunity under 42 U.S.C. § 1404a would be found only for claims that are not considered to be against the United States and relied upon language in *Weeks Constr., Inc. v. Oglala Sioux Hous.*

---

[5] "[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276 (1957).

9

*Auth.*, 797 F.2d 668, 676 n.9 (8th Cir. 1986), for distinguishing between claims against the United States which must be brought in the Claims Court under the Tucker Act and claims against federal instrumentalities. The Eighth Circuit in *Weeks* stated, "Drawing this distinction [between a suit against the United States and one against a federal agency] requires a determination whether any recovery of damages may be had only from funds in the possession and control of the agency or whether recovery may be had from public funds in the United States Treasury." 797 F.2d at 676 n.9. This Court in determining that there was no waiver of sovereign immunity under 42 U.S.C. § 1404a that would allow jurisdiction in the district court relied upon a number of cases, including *Greenleaf Ltd. P'ship v. Illinois Hous. Dev. Auth.*, 2009 WL 449100 (N.D.Ill.2009), that held that funds for recovery of damages for breach of the Annual Contribution Contracts would come from the public treasury, not from funds within the control of HUD.

In HUD's brief before the Seventh Circuit Court of Appeals in *Greenleaf Ltd. P'ship v. Illinois Hous. Dev. Auth.* (7th Cir. No. 11-1753), HUD conceded error in its prior view that the sue-and-be sued clause of 42 U.S.C. § 1404a did not waive HUD's sovereign immunity in a breach of contract case involving the administration of the Section 8 low-income housing assistance program. In the *Greenleaf* appellate brief HUD reasoned that the Supreme Court has explained that sue-and-be sued clauses such as 42 U.S.C. § 1404a are to be liberally construed. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 480 (1994) ("In the past, we have recognized that such sue-and-be-sued waivers are to be 'liberally construed.'" ).[6] HUD further took the position that courts erred in concluding that 42 U.S.C. § 1404a and similar sue-and be-sued provisions, in order to be applicable, require an identifiable source of funds within the exclusive control of the agency and severed from general Treasury funds from which to satisfy a judgment. This error, HUD now contends, is based on the absence of such a limitation in the language of the sue-and-be-sued waivers and a misunderstanding of the Supreme Court's decision in *Federal Hous. Admin. v. Burr*, 309 U.S. 242 (1940).

The *Burr* case involved a garnishment action against the Federal Housing Administration.

---

[6]This Court notes, however, that in *United States v. Sherwood*, 312 U.S. 584, 590 (1941), the Supreme Court in interpreting section 2 of the Tucker Act stated, "The section must be interpreted in the light of its function in giving consent of the Government to be sued, which consent, since it is a relinquishment of a sovereign immunity, must be strictly interpreted."

The Federal Housing Administration was created by the National Housing Act, which contained the following provision: "The Administrator shall, in carrying out the provisions of this title and titles II and III, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1702. The Supreme Court in *Burr* observed that such "sue and be sued" clauses are waivers by Congress of governmental immunity which should be liberally construed. 309 U.S. at 245. The Supreme Court explained:

> [W]hen Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued', it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense.

309 U.S. at 245. The Supreme Court held that the Federal Housing Administration was subject to a state garnishment proceeding, but further explained:

> [O]nly those funds which have been paid over to the Federal Housing Administration in accordance with s 1 and which are in its possession, severed from Treasury funds and Treasury control, are subject to execution. Since no consent to reach government funds has been given, execution thereon would run counter to *Buchanan v. Alexander*, [4 How. 20, 11 L.Ed. 857]. To conclude otherwise would be to allow proceedings against the United States where it had not waived its immunity. This restriction on execution may as a practical matter deprive it of utility, since funds of petitioner appear to be deposited with the Treasurer of the United States and payments and other obligations are made through the Chief Disbursing Officer of the Treasury. But that is an inherent limitation, under this statutory scheme, on the legal remedies which Congress has provided.

309 U.S. at 250-251.

HUD maintains that the above discussion in *Burr* regarding the statutory limits on execution does not negate the Supreme Court's holding regarding the jurisdictional scope established by the sue-and-be-sued clause, and that the jurisdictional determination in *Burr* was not based on the source of funds that were available to satisfy a judgment against an agency. HUD further maintains that the Supreme Court's acknowledgment in *Burr* that the garnishor may be unable to execute on the

11

judgment is based on a statutory provision in the National Housing Act with is not present in the United States Housing Act. Section 1 of National Housing Act provided that claims against the Federal Housing Administration of the type involved in *Burr* "shall be paid out of funds made available by this chapter." 12 U.S.C. § 1702. The United States Housing Act, however, does not contain that limitation and provides that the "full faith and credit of the United States is solemnly pledged to the payment of all annual contributions contracted for pursuant to this section." 42 U.S.C. § 1437c(c)(3).

A number of courts likewise have maintained that *Burr* has been misconstrued to impose an unwarranted and illogical treasury funds/agency funds test for the application of sue-and-be-sued waivers of immunity. In *Auction Co. of America v. Federal Dep. Ins. Corp.*, 132 F.3d 746 (C.A.D.C. 1997), a case that involved a sue-and-be-sued clause in the Financial Institutions and Reform, Recovery, and Enforcement Act of 1989, the Court of Appeals for the District of Columbia examined the origins and validity of the distinction between suits against the United States and those against an agency of the United States in determining whether there exists a separate waiver of sovereign immunity and grant of jurisdiction so that district courts had the authority to hear cases over which, under the Tucker Act alone, would be under the exclusive jurisdiction of the Court of Federal Claims. The court in *Auction Co. of America* observed that when the Supreme Court in *Burr* noted that the statute authorizing suit against the Federal Housing Administration required that claims could be paid only from funds made available to the Federal Housing Administration, the Supreme Court "did no more than state the unexceptionable principle that Congress, in waiving sovereign immunity for an agency, may limit the terms of the waiver." 132 F.3d at 752. The court in *Auction Co. of America* further observed that later cases revised that stated principle and "restated it as the principle that a suit is against an agency only if plaintiffs can point to agency monies to satisfy a potential judgment." *Id.*

The court in *Auction Co. of America* discussed what it considered the practical weakness and logical fallacy of basing jurisdiction on the treasury funds/agency funds test. The court in *Auction Co. of America* pointed out that later cases relying on *Burr*, such as the Ninth Circuit's decision in *Marcus Garvey Square, Inc. v. Winston Burnett Const. Co. of Cal., Inc.*, 595 F.2d 1126 (9th Cir. 1979), incorrectly extended the holding in *Burr* for the proposition that a suit is against an agency

only if the plaintiff can point to agency funds to satisfy a potential judgment, otherwise the suit is against the United States and must be brought in the Court of Federal Claims under the Tucker Act's general waiver of sovereign immunity.

The court in *Auction Co. of America* explained that the weakness of the revised principle was exposed by the Fourth Circuit's acknowledgment in *Portsmouth Redevelopment and Hous. Auth. v. Pierce,* 706 F.2d 471, 473-474 (4th Cir. 1983), that public funds appropriated to HUD originate in the public treasury and remain public funds. The court in *Auction Co. of America* further explained that it made no sense to characterize a suit as either being against an agency or against the United States because the test cited for that purpose, came from *Dugan v. Rank,* 372 U.S. 609, 620 (1963), and was designed to distinguish between suits against private individuals and suits against the sovereign. The court in *Auction Co. of America* concluded:

> Federal agencies or instrumentalities performing federal functions always fall on the "sovereign" side of that fault line; that is why they possess immunity that requires waiver. To say that suits against agencies are not against the United States in that sense is simply wrong; to say that they are against the United States and not the agency is to make "sue-or-be-sued" clauses nullities. The idea that the *Dugan* test may be used to draw two different lines-the line between suits against the United States and ones against private persons, and the line between suits against the United States and ones against its agencies-is confused at its core and we reject it. The source of funds for any recovery in this case may become an issue, but it is not jurisdictional ... .

*Auction Co. of America v. Federal Dep. Ins. Corp.*, 132 F.3d at 752. *See also Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 378-381 (6th Cir. 2008); *C.D. Barnes Assocs. Inc. v. Grand Haven Hideaway Ltd. P'ship*, 406 F.Supp.2d 801, 818 (W.D.Mich. 2005) (rejecting treasury funds/agency funds test "because, to hold that public monies appropriated to HUD or any other governmental agency can never be used to satisfy a judgment obtained by a waiver under a sue and be sued clause would render such clauses ineffectual").

In its *Greenleaf* appellate brief HUD acknowledged as follows the practical weakness of requiring a waiver from sovereign immunity depend on the source of funds that would satisfy a judgment:

> Indeed, a rule requiring courts to determine, at the outset of a suit, how a hypothetical money judgment would be satisfied is not administrable. Federal accounting is

> complex, and an agency may have myriad funding relationships to the Treasury depending on the program at issue and the type of claim being raised. ... Indeed, even many nominally self-contained government corporations can sometimes borrow money from the Treasury to fund their operations, in addition to using their own funds. It would be extraordinarily difficult for a court to identify in advance the funding source for a judgment in such circumstances. Indeed, the district court here recognized that, under the rule proposed by the government, it had to "speculate as to whether HUD would have funds on hand to satisfy the judgment." It is doubtful that Congress intended to make the threshold sovereign-immunity inquiry turn on such speculation.

Doc. 127, attach. 1.

The Court finds HUD's reasoning and the analysis in *Auction Co. of America v. Federal Dep. Ins. Corp.*, 132 F.3d 746 (C.A.D.C. 1997), *Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 378-381 (6th Cir. 2008), and *C.D. Barnes Assocs. Inc. v. Grand Haven Hideaway Ltd. P'ship*, 406 F.Supp.2d 801, 818 (W.D.Mich.2005), to be persuasive. The Court, however, must also determine if it is bound by Circuit precedent to follow *Weeks Constr. Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 675-76 (8th Cir. 1986), in applying the treasury funds/agency funds test. *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir.2003) (district courts in the Eighth Circuit are bound to apply Eighth Circuit precedent). On the issue of applying the treasury funds/agency funds test to determine if there has been a waiver of immunity, however, there is conflicting circuit precedent. In the March 30, 2009 decision granting HUD's motion to dismiss South Dakota Housing Authority's third-party complaint in this action, this Court noted that in *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174 (8th Cir. 1978), the Eight Circuit held the Secretary of the Department of Housing and Urban Development could be sued in federal district court for monies due on a construction contract and that the analysis in *Bor-Son* did not involve identifying the source of funds to satisfy any potential judgment.

The *Bor-Son* case involved the National Housing Act and its sue-and-be-sued clause of 12 U.S.C. § 1702 and whether Section 1702 waives sovereign immunity over claims against the Secretary of HUD brought by a building contractor in connection with construction work on a housing project that was insured by the Secretary of HUD. Section 1702 provided: "The Secretary shall, in carrying out the provisions of this subchapter (I) and subchapters II, III, V, VI, VII, VIII, X,

IX-A, and IX-B, of this chapter (13), be authorized in his (her) official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." The panel of the Eighth Circuit in *Bor-Son* recognized that *Federal Housing Administration v. Burr*, 309 U.S. 242, 245 (1940), had made it clear that Section 1702's waiver of sovereign immunity "should be liberally construed." 572 F.2d at 180. The panel of the Eighth Circuit in *Bor-Son* relied upon *Burr*'s consideration of the "in carrying out" clause of Section 1702. *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d at 179. The Eight Circuit stated, "In the language of *Burr*, the Secretary has been 'launched . . . into the commercial world' and, if her actions or the actions of those under her were such as would entail liability to Bor-Son on general legal and equitable principles, she 'is not less amenable to judicial process than a private enterprise under like circumstances would be.'" *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d at 181 (quoting *Burr*, 309 U.S. at 245).

In *Bor-Son*, the Eighth Circuit held that in consideration of the waiver of sovereign immunity in 12 U.S.C. § 1702, the Tucker Act did not require that the Court of Claims have exclusive jurisdiction over the matter. The analysis in *Bor-Son* did not include any discussion of the treasury funds/agency funds. Instead, the Eighth Circuit explained:

> Most claimants against the government rely on the Tucker Act for the waiver of sovereign immunity that would otherwise preclude their suits. When such a claimant attempts to sue in a district court for a sum that exceeds s 1331's $10,000 jurisdictional minimum, he encounters the Tucker Act's $10,000 maximum, and his claim therefore fails as an unconsented suit against the sovereign. Hence it is commonly said that suits against the government for more than $10,000 are in the exclusive jurisdiction of the Court of Claims. In fact, the jurisdiction of the Court of Claims for suits claiming more than $10,000 is not exclusive; rather, there is rarely any statute available that waives sovereign immunity for suits in the district court, other than the Tucker Act with its $10,000 limit.

*Bor-Son Bldg. Corp. v. Heller*, 572 F.2d at 182 n.14 (citing *Ghent v. Lynn*, 392 F.Supp. 879, 881 (D.Conn.1975)).

In a later case, *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109 (8th Cir. 2000), the Eight Circuit again addressed whether the National Housing Act's waiver of sovereign immunity, 12 U.S.C.A. § 1702, allowed for jurisdiction in the district court. In *V S Ltd. P'ship*, the Eighth Circuit concluded that there was not a waiver of sovereign immunity and no award of subject matter jurisdiction in the district court in a claim for breach of an oral modification of a mortgage

15

agreement. This conclusion, however, was not based on the source of funds satisfying any potential judgment, and the opinion did not cite to *Weeks Constr. Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668 (8th Cir. 1986). The conclusion was based instead on the requirement in the National Housing Act's waiver of sovereign immunity that an official be "carrying out the provisions" of the National Housing Act. 235 F.3d at 1113. That requirement could not be met because the National Housing Act prohibits the oral modification of mortgage agreements. The Eighth Circuit in *V S Ltd. P'ship* cited to *Bor-Son Building Corp. v. Heller*, 572 F.2d 174, 178-81 (8th Cir.1978), and stated: "The present situation must be distinguished from that where a party sues to enforce rights under a contract validly entered into under the NHA, in which case jurisdiction would properly lie in the district court." *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d at 1113 n.4.

Although *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174 (8th Cir. 1978), and, *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109 (8th Cir. 2000), dealt with the National Housing Act as opposed to the United States Housing Act, which is involved in both the case at hand and in *Weeks Constr. Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668 (8th Cir. 1986), that distinction is of little significance on the issue of whether to apply the treasury funds/agency funds test in determining whether a sue-and-be-sued clause allows a district court to have jurisdiction to hear a case. In determining which case controls on this jurisdiction issue, this Court follows the Eighth Circuit position that when a court is confronted with conflicting circuit precedent, the better practice is to follow the earliest opinion since that opinion should have controlled the subsequent panel that created the conflict. *See United States v. Bauer*, 626 F.3d 406, 409 (8th Cir. 2010) (quoting *T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006)).

*Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174 (8th Cir. 1978), was the earliest opinion interpreting these sue-and-be sued clauses and their impact on district court jurisdiction. *Bor-Son* was not addressed in the *Weeks* opinion when it addressed the treasury funds/agency funds test, and the panel in *Weeks* acknowledged, "The parties have not briefed this issue nor argued to this court the question of the source of funds for any damages recovered by Weeks." *Weeks*, 797 F.2d at 675 n.9. This Court also believes it is significant that the later case of *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109 (8th Cir. 2000), cited to *Bor-Son*, not *Weeks*, and did not address a treasury funds/agency funds test in determining jurisdiction. This Court has thus determined that

Eighth Circuit precedent does not prohibit it from adopting HUD's reasoning and the analysis in *Auction Co. of America v. Federal Dep. Ins. Corp.*, 132 F.3d 746 (C.A.D.C. 1997), *Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 378-381 (6th Cir. 2008), and *C.D. Barnes Assocs. Inc. v. Grand Haven Hideaway Ltd. P'ship*, 406 F.Supp.2d 801, 818 (W.D.Mich.2005), in rejecting the treasury funds/agency funds test, and granting the motion to reconsider the March 30, 2009 decision granting HUD's motion to dismiss South Dakota Housing Development Authority's third-party complaint with regard to the breach of contract claim.

### REQUEST FOR DECLARATORY RELIEF ON PROSPECTIVE RIGHTS

In the parties' joint motion for prospective relief, the parties requested a declaratory judgment stating the parties' prospective rights and obligations under their Housing Assistance Payments contracts based on the breach of contract rulings in the Court's Memorandum Opinion and Order. The parties stated, " The Court's Opinion did not state whether its rulings applied prospectively, because the parties had not requested prospective relief in their pleadings." Doc. 116, p. 2. The parties contended that absent such a ruling, they may be forced to relitigate the same issues until the expiration of all of their Housing Assistance Payment contracts.

The parties have not explained why the need for prospective relief would not be satisfied by the res judicata effect of a judgment in the breach of contract claims. *See Cathedral Square Partners Ltd. P'ship v. South Dakota*, 679 F.Supp.2d 1034, 1044 (D.S.D. 2009). In addition, since the parties had not requested prospective declaratory relief in their original pleadings and HUD has not taken part in but may be affected by such declaratory relief, the Court is denying without prejudice the parties' request for declaratory relief on prospective rights. *See Diagnostic Unit Inmate Council v. Motion Picture Ass'n of America*, 953 F.2d 376 (8th Cir. 1992) (declaratory relief may properly be withheld for nonjoinder of interested parties).

Accordingly,

IT IS ORDERED:

1. That Plaintiff West Park, Ltd.'s motion for reconsideration of the Summary Judgment Memorandum Opinion, Doc. 118, is granted and the portion of the Summary Judgment Memorandum Opinion and Order granting summary judgment against West Park, Ltd. Is vacated;
2. That Defendant South Dakota Housing Authority's motion for reconsideration (Doc. 127) regarding this Court's March 30, 2009 decision granting the HUD's motion to dismiss

SDHDA's third-party complaint in this action is granted with regard to the breach of contract claim;

3. That the parties' joint motion for prospective relief (Doc. 116) is denied without prejudice; and

4. That the parties, including the United States Department of Housing and Urban Development, shall file a joint status report within 20 days of the date of this Memorandum Opinion setting forth a proposed schedule and a summary of how the parties believe the case should now proceed.

Dated this 22nd day of June, 2012.

BY THE COURT:

*/s/ Lawrence L. Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *Summer Wahpul*
Deputy