UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED
AUG 14 2013
CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| CATHEDRAL SQUARE PARTNERS LIMITED PARTNERSHIP; WEST PARK LTD.; 46th STREET PARTNERS LIMITED PARTNERSHIP; and RIVERVIEW PARK, LTD., | * | CIV 07-4001 |
| Plaintiffs, | * | |
| vs. | * | MEMORANDUM OPINION AND ORDER RE: MOTION FOR PARTIAL DISMISSAL OF THIRD-PARTY COMPLAINT |
| SOUTH DAKOTA HOUSING DEVELOPMENT AUTHORITY, | * | |
| Defendant and Third-Party Plaintiff, | * | |
| vs. | * | |
| SHAUN DONOVAN, Secretary, United States Department of Housing and Urban Development, | * | |
| Third-Party Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

South Dakota Housing Authority, having claimed that it is "caught in the middle" between Plaintiffs and the United States Department of Housing and Urban Development (HUD) on the issues raised by the Plaintiffs in their Second Amended Complaint against South Dakota Housing Authority, filed a third-party complaint against HUD on June 10, 2008, alleging claims for violation of the Administrative Procedure Act, breach of contract, and declaratory judgment. This Court granted HUD's motion to dismiss on March 30, 2009. *See Cathedral Square Partners Ltd. P'ship v. South Dakota Hous. Dev. Auth.*, 679 F.Supp.2d 1034 (D.S.D. 2009). This Court then resolved the

1

issues presented by the Plaintiffs' and South Dakota Housing Authority's summary judgment motions in a memorandum opinion dated January 5, 2011. In that memorandum opinion this Court held that Plaintiffs Cathedral Square Partners Limited Partnership, 46th Street Partners Limited Partnership, and Riverview Park, Ltd. were entitled to summary judgment on the issue of whether their Housing Assistance Payments Contracts were breached by the shifting of the burden to the landlord to prove entitlement to annual rent increases, and further held that the South Dakota Housing Development Authority could not invoke the Overall Limitation Clause to limit its damages for breach of contract . *See Cathedral Square Partners Ltd. P 'ship v. South Dakota Hous. Dev. Auth.*, 2011 WL 43019 (D.S.D. Jan. 5, 2011).[1]

After HUD conceded in another case that the sue-and-be-sued clause of 42 U.S.C. § 1404a[2]

---

[1] This decision also held that a provision in the 1994 amendments to the Section 8 program that established a one percent reduction in automatic annual adjustment factors for non-turnover units was not a breach of the contracts. 2011 WL 43019 at *17. This Court also concluded as a general matter that costs for those comparability studies that Plaintiffs may have conducted within the statute of limitations would be reimbursable as damages. 2011 WL 43019 at *18.

[2] 42 U.S.C. § 1404a provides:
> The Secretary of Housing and Urban Development may sue and be sued only with respect to its functions under the United States Housing Act of 1937, as amended [42 U.S.C.A. § 1437 et seq.], and title II of Public Law 671, Seventy-sixth Congress, approved June 28, 1940, as amended [42 U.S.C.A. § 1501 et seq.]. Funds made available for carrying out the functions, powers, and duties of the Secretary of Housing and Urban Development (including appropriations therefor, which are authorized) shall be available, in such amounts as may from year to year be authorized by the Congress, for the administrative expenses of the Secretary of Housing and Urban Development. Notwithstanding any other provisions of law except provisions of law enacted after August 10, 1948 expressly in limitation hereof, the Secretary of Housing and Urban Development, or any State or local public agency administering a low-rent housing project assisted pursuant to the United States Housing Act of 1937 or title II of Public Law 671, Seventy-sixth Congress, approved June 28, 1940, shall continue to have the right to maintain an action or proceeding to recover possession of any housing accommodations operated by it where such action is authorized by the statute or regulations under which such housing accommodations are administered, and, in determining net income for the purposes of tenant eligibility with respect to low-rent housing projects assisted pursuant to said Acts, the Secretary of Housing and Urban Development is authorized, where it finds such action equitable and in the public

waives sovereign immunity regarding certain claims against HUD, South Dakota Housing Authority (SDHDA) moved for reconsideration and this Court granted the motion with regard to SDHDA's breach of contract claim. *See Cathedral Square Partners Ltd. P'ship v. South Dakota Hous. Dev. Auth.*, 875 F.Supp.2d 952 (D.S.D. 2012) (granting both Plaintiff West Park's and SDHDA's motions for reconsideration).

The parties engaged in settlement negotiations which ultimately resulted in SDHDA and all of the Plaintiffs but Riverview Park settling their claims. SDHDA moved for leave to file an Amended Third-Party Complaint against the Secretary of HUD (Doc. 136), and this Court granted the motion. Doc. 143. After this Court denied SDHDA and Plaintiff Riverview Park's Joint Motion for Final Judgment and Order to the extent that it requested declaratory relief concerning future annual rent adjustments (Doc. 152), SDHDA and Plaintiff Riverview Park submitted a joint statement that no issues remained from Riverview's Complaint to be decided at the scheduled July 23, 2013 trial. Doc. 156.

SDHDA filed its Amended Third-Party Complaint on February 1, 2013. Doc. 144. SDHDA's Amended Third-Party Complaint alleges in Count I, a claim for an Administrative Procedure Act violation;[3] in Count II, a claim for breach of contract; in Count III, a request for declaratory relief; and in Count IV, a claim for indemnification. HUD has moved under Fed. R. Civ. P. 12(b)(1) and 12(c) for partial dismissal and judgment on the pleadings regarding SDHDA's breach of contract claim (Count II), in part, insofar as SDHDA seeks contract-based indemnification; as to the declaratory judgment claim (Count III), in part, insofar as SDHDA seeks relief regarding the two contracts that relate to Plaintiff Riverview Park, Ltd.'s property; and as to the agency-based indemnification claim (Count IV) in its entirety. HUD further moves to dismiss for lack of subject

---

interest, to exclude amounts or portions thereof paid by the United States Government for disability or death occurring in connection with military service.

[3]HUD states in its Memorandum in Support of Rule 12(b)(1) and (c) Motions for Partial Dismissal and Judgment on the Pleadings, "Although the Amended Third-Party Complaint continues to contain South Dakota Housing's APA claim (Count I and ¶ 2 of the Prayer for Relief), that claim was previously dismissed and not revived." Doc. 145-1, p. 7. In a July 16, 2013 Joint Statement by SDHDA and HUD, the parties state that the Amended Third-Party Complaint contains three claims, which are breach of contract, declaratory judgment and indemnification. No mention is made of the APA claim. Doc. 161. No APA claim remains.

matter jurisdiction the remainder of the declaratory judgment claim (Count III), in which South Dakota Housing seeks relief as to 146 contracts that do not directly concern the named Plaintiffs' properties, and as to six contracts that relate to the properties of the Plaintiffs who have settled their claims with SDHDA. Doc. 145.

In the Joint Stipulation of Dismissal of Plaintiff's Claims, SDHDA represents: "Plaintiffs' dismissal of their claims shall not, however, preclude SDHDA from continuing its third party complaint against HUD to pursue recovery of costs and attorneys fees incurred by SDHDA in defending this action." SDHDA further represents: "Plaintiffs' dismissal of their claims shall not, however, preclude SDHDA from continuing its third party complaint against HUD pertaining to the Riverview Contract or the corresponding annual contributions contract between SDHDA and HUD for periods of time after September 30, 2012." Doc. 157.

## DISCUSSION

*Factual Background* as Set *Forth in Pleadings*

Under Section 8 of the United States Housing Act of 1937, as amended, HUD subsidizes the rents of low-income tenants who reside in privately-owned dwellings. 42 U.S.C. § 1437f. The Section 8 program provides rent subsidies in one of two ways: either HUD enters into a housing assistance payments (HAP) contract directly with a private owner of multi-family housing units, or HUD enters into a Contributions Contract with a public housing agency and the public housing agency enters into a HAP contract with the owner. Under either scenario the HAP contract specifies a monthly Contract Rent the owner will receive for particular housing units. The tenant then pays the owner a percentage of the Contract Rent based on the tenant's income, and either HUD or the public housing agency pays the landlord the difference between the amount payable by the tenant and the Contract Rent in the form of housing assistance payments.

SDHDA entered into four HAP contracts with the four named plaintiffs in this action, and entered into four corresponding Contributions Contracts with HUD. Under these four Contributions Contracts, HUD provides annual contributions to SDHDA, and SDHDA then applies those annual contributions to its housing assistance payments to the plaintiff owners. SDHDA is a party to an additional 73 HAP contracts with persons or entities who are not parties to this case, and is a party to 73 corresponding Contributions Contracts with HUD.

In 1994 Congress amended Section 8 to place certain additional limitations on annual increases in Contract Rents. Pub.L. No. 103-327, 108 Stat. 2298, 2315 (1994). Subsequent statutory amendments cumulatively made the limitations in the 1994 amendments applicable to subsequent years. HUD issued Notice H 95-12 on March 7, 1995, for the purpose of implementing the revisions to Section 8 made by Congress. This directive imposed additional requirements beyond those contained in existing HAP Contracts or the 1994 amendments.

SDHDA maintains it has administered the HAP Contracts for all of its Section 8 projects in accordance with Notice H 95-12 and the 1994 amendments, and has only adjusted Contracts Rents as directed and permitted by HUD. SDHDA further maintains it cannot grant Plaintiffs the relief they have sought in this action unless and until HUD directs or permits SDHDA to do so and provides the requisite funding. Since SDHDA maintains that the legal issues relating to the alleged breaches of Plaintiffs' HAP Contracts also affect future annual rent increases for some or all of the other Section 8 projects for which SDHDA has entered into involving similar HAP Contracts and Contributions Contracts, SDHDA contends it cannot properly and uniformly administer the Section 8 HAP Contracts to which it is a party without clarification of its legal rights and obligations with respect to the calculation of annual rent increases, and HUD's rights and obligations with respect to the calculation and funding of annual rent increases.

*Standards in Determining a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(c).*

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss an action for lack of subject matter jurisdiction. Under a motion to dismiss based on lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the plaintiff's complaint on its face or based on the factual truthfulness of the claims. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The plaintiff carries the burden of showing that jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). "The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Drevlow v. Lutheran Church, Missouri Synod*, 991 F.2d 468, 470 (8th Cir. 1993).

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standards that apply to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). In considering a motion under Rule 12(b)(6)

5

the factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), *cited in Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (internal citations omitted). The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. *Id.*(internal citations omitted); *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). Although a plaintiff in defending a motion under Rule 12(b)(6) need not provide specific facts in support of its allegations, *see Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), it must include sufficient factual information to provide the grounds on which its claim rests, and to raise a right to relief above a speculative level. *Twombly*, 550 U.S. at 555-556 & n3. Although Federal Rule of Civil Procedure 8 may not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."*Ashcroft v. Iqbal*, 556 U.S, 662, 678 (2009). A claim must have facial plausibility to survive a motion to dismiss. *Id.* Determining whether a claim has facial plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679.

*Waiver of Sovereign Immunity and Jurisdiction of District Court*

Although the parties agree that this Court has subject matter jurisdiction, at least with regard to some of the claims, specifically, the contract claim that is not based on indemnification, this Court has an independent duty to determine that subject matter jurisdiction exists and must resolve that issue before reaching the merits of the action. *City of Kan. City, Mo. v. Yarco Co., Inc.*, 625 F.3d 1038, 1040 (8th Cir. 2010). In *Cathedral Square Partners Ltd. P'ship v. South Dakota Hous. Dev. Auth.*, 679 F.Supp.2d 1034 (D.S.D. 2009), this Court originally held that the Administrative Procedure Act's waiver of sovereign immunity did not apply so as to grant District Court jurisdiction over SDHDA's claims against the Secretary of HUD. In 2009, this Court also held that the Plaintiffs' claims against HUD were actually claims against the United States which could be satisfied by a money judgment, and therefore the proper forum for resolution of that dispute was not a district court under the Administrative Procedure Act, but instead, the Court of Federal Claims under the Tucker Act. 679 F.Supp.2d at 1043-1044.

After HUD changed its position only on the scope of the sue-and-be-sued clause of 42 U.S.C. § 1404a, this Court reexamined its position in its March 30, 2009 decision granting HUD's motion to dismiss SDHDA's third-party complaint, which relied on *Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.*, which distinguished a suit against the United States from a suit against a federal agency by determining "whether any recovery of damages may be had only from funds in the possession and control of the agency or whether recovery may be had from public funds in the United States Treasury." 797 F.2d 668, 676 n. 9 (8th Cir. 1986). This Court found that the cases rejecting a treasury funds/agency funds analysis to be persuasive, and proceeded to determine whether is was bound by Circuit precedent to follow *Weeks Constr. Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 675–76 (8th Cir. 1986), in applying the treasury funds/agency funds test. *Cathedral Square Partners Ltd. P'ship v. South Dakota Hous. Dev. Auth.*, 875 F.Supp.2d 952, 964 (D.S.D. 2012).

This Court observed that in *Bor–Son Bldg. Corp. v. Heller*, 572 F.2d 174 (8th Cir.1978), the Eighth Circuit had held that the Secretary of the Department of Housing and Urban Development could be sued in federal district court for monies due on a construction contract, and that the analysis in the *Bor–Son* case did not involve identifying the source of funds to satisfy any potential judgment as a prerequisite to finding jurisdiction. 875 F.Supp.2d at 964-965. In *Bor–Son*, the Eighth Circuit held that because of the waiver of sovereign immunity in 12 U.S.C. § 1702,[4] the Tucker Act did not require that the Court of Claims have exclusive jurisdiction over the matter. *Bor–Son Bldg. Corp. v. Heller*, 572 F.2d at 180-181. The *Bor-Son* case relied upon *Federal Housing Administration v. Burr*, 309 U.S. 242(1940), which interpreted the predecessor of 12 U.S.C. § 1702. 12 U.S.C. § 1702 authorized the Federal Housing Administrator to sue and be sued "in carrying out" specified provisions of the National Housing Act. The Eighth Circuit in *Bor-Son* case observed that the Supreme Court in *Burr* held that Section 1702's waiver of sovereign immunity "'should be liberally construed.'" *Bor–Son Bldg. Corp.*, 572 F.2d at 179 (quoting *Burr*, 309 U.S. at 245). The Supreme Court in *Burr* explained:

---

[4] 12 U.S.C. § 1702 provides in relevant part: "The Secretary shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, IX-B, and X of this chapter, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal."

> [W]hen Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued', it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued', that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

*Burr*, 309 U.S. at 245. The Court assumes that allowing the breach of contract action against HUD does not involve "grave interference with the performance of a governmental function," or else HUD would not be advocating that this Court follow *Burr's* holding of finding a limited waiver of sovereign immunity in this case.

The Eighth Circuit in *Bor-Son* also cautioned: "Burr also makes clear, however, that the "in carrying out" clause contained in the waiver is not to be disregarded." *Bor–Son Bldg. Corp.*, 572 F.2d at 1179 (citing *Burr*, 309 U.S. at 248). In reexamining its earlier reliance on *Weeks*, this Court also found it significant that the later case of *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109 (8th Cir. 2000), cited to *Bor–Son*, not *Weeks*, and did not address a treasury funds/agency funds test, but looked at whether the agency was carrying out the provisions of the National Housing Act in determining whether a district court had jurisdiction in a contract case brought against HUD. 235 F.3d 1109, 1113 n.4 (8th Cir. 2000) ("The pertinent question then is whether in forming the alleged oral agreement, the HUD officials were 'carrying out the provisions' of the NHA"). HUD was carrying out the provisions of and amendments to Section 8 of the United States Housing Act of 1937 in all matters material to this lawsuit.

The Court is satisfied that its reliance on *Bor–Son*, *Burr* and the sue-and-be-sued clause of 42 U.S.C. § 1404a is valid in determining whether there has been a limited waiver of sovereign immunity on a contract claim against HUD "with respect to [the Secretary of HUD's] functions under the United States Housing Act of 1937," and that this Court has jurisdiction to consider such a contract claim. *See also One and Ken Valley Hous. Group v. Maine State Hous. Auth.*, No. 09-642,

2011 WL 2632433 at *13 (D. Me. June 24, 2011), report and recommendation adopted by 2011 WL 4834258 (D. Me. Oct. 12, 2011) ( "Based on the reasoning set forth in *FHA v. Burr* and the sue-and-be-sued waiver contained in section 1404a of the National Housing Act of 1937, the Secretary in his official capacity and HUD are amenable to suit on a contract claim 'with respect to [HUD's] functions under the United States Housing Act of 1937.'").

To sue the United States, however, a plaintiff must show both a waiver of sovereign immunity, and a grant of subject matter jurisdiction. *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). There is a grant of subject matter jurisdiction under 28 U.S.C. § 1331, in that this action seeks establishment of the responsibilities and liability of a federal agency and the interpretation and application of the 1994 amendments to Section 8 and corresponding HUD directives.[5]

## I.

## WHETHER SOUTH DAKOTA HOUSING DEVELOPMENT AUTHORITY STATES A PLAUSIBLE CLAIM FOR INDEMNIFICATION?

*Contract-Based Indemnification*

SDHDA alleges in its breach of contract cause of action that if HUD has caused SDHDA to

---

[5]In a case involving Section 8 landlords and a state housing agency, the First Circuit held that there was jurisdiction under the federal ingredient doctrine. The First Circuit found that federal jurisdiction existed under that doctrine because:

> (1) "[t]he imposition of liability on Government contractors will directly affect the terms of Government contracts"); (2) the "dispute ... turn[s] on the interpretation of a contract provision approved by a federal agency pursuant to a federal statutory scheme"; (3) the alleged breach occurred only because the contractor was following the federal agency's explicit instructions; (4) the case presents a pure question of law that will govern numerous cases nationwide; (5) the federal government has an overwhelming interest in seeing the issue decided according to a uniform principle; and (6) there is no countervailing state interest in having the dispute adjudicated in a state forum.

*One and Ken Valley Housing Group v. Maine State Housing*, 716 F.3d 218, 225 (1st Cir. 2013) (citations omitted).

9

breach its Section 8 HAP contracts with the Plaintiffs, SDHDA is entitled to indemnification by HUD for all costs and expenses it has sustained or will sustain to remedy those breaches. SDHDA also alleges in its indemnification cause of action that HUD has a duty to indemnify SDHDA against expenses and other losses incurred by SDHDA in defending the lawsuit brought against it by Plaintiffs. Doc. 144. HUD contends that SDHDA's breach of contract claim should be dismissed to the extent it seeks to impose a duty of indemnification on HUD.[6] HUD argues that SDHDA does not and can not identify any provision of the Contributions Contracts that requires HUD to indemnify it against the Plaintiffs' claims so as to support an express contractual right to indemnification. HUD also argues that a contractual duty to indemnify against a third-party's claims cannot be implied in law against the federal government. In support of its argument HUD relies on *Hercules, Inc. v. United States*, 516 U.S. 417 (1996).

The *Hercules* case involved chemical manufacturers that produced Agent Orange at the request of the Government during the Vietnam War. The military prescribed the formula and detailed the specifications for manufacture in contracts entered into under the Defense Production Act of 1950. After Vietnam veterans and their families sued several manufactures of Agent Orange for allegedly causing health problems, the manufacturers settled the claims of a certified class of plaintiffs. The manufactures unsuccessfully sued the United States for indemnification in district court and the United States Claims Court.

The Supreme Court in deciding the contract claim in *Hercules* advised, "We have repeatedly held that [Tucker Act] jurisdiction extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Hercules*, 516 U.S. at 423. The Supreme Court has defined an agreement implied in fact as being one "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties

---

[6]SDHDA has pled the following two breach of contract causes of action theories in its Amended Third-Party Complaint:
> "32. If HUD has caused SDHDA to breach its Section 8 HAP Contracts with plaintiffs, HUD has breached the related ACCs [contributions contracts] with SDHDA.
> 33. If HUD has caused SDHDA to breach its Section 8 HAP Contracts with plaintiffs, SDHDA is entitled to indemnification by HUD for all costs and expenses it has sustained or will sustain to remedy those breaches."

showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & O. R. Co. v. United States*, 261 U.S. 592, 597 (1923), *quoted in Hercules*, 516 U.S. at 424.

In the *Hercules* case the manufacturers did not contend that their contracts contained express indemnification provisions. However, one of the manufacturers in the *Hercules* case argued that the context in which the Government compelled it to manufacture Agent Orange constituted an implied-in-fact agreement by the Government to indemnify it for losses to third parties. That manufacturer relied on the facts that the Government, which had superior knowledge of Agent Orange's hazards, imposed detailed specifications, and required the manufacturer, under authority of the Defense Production Act and threat of civil and criminal fines, to produce the Agent Orange. The Supreme Court found, however, that those circumstance did not give rise to an implied-in-fact indemnity agreement. *Hercules*, 516 U.S. at 426. The Supreme Court in rejecting the implied-in-fact-contract-theory in *Hercules,* also reasoned that a contracting officer would not have agreed to an open-ended indemnification because of the Anti–Deficiency Act, which bars a federal employee or agency from entering into a contract the terms of which call for future payment of money in advance of, or in excess of, an existing appropriation. *Hercules*, 516 U.S. at 426-427 (citing 31 U.S.C. § 1341).[7]

South Dakota Housing Development Authority distinguishes the *Hercules* case by arguing that the Section 8 statute furnishes a limitation on HUD's liability. SDHDA relies upon the language in 42 U.S.C. § 1404a, the sue-and-be sued provision, which states: "Funds made available for carrying out the functions, powers, and duties of the Secretary of Housing and Urban Development (including appropriations therefor, which are authorized) shall be available, in such amounts as may from year to year be authorized by the Congress, for the administrative expenses of the Secretary of Housing and Urban Development." SDHDA then cites case law recognizing that since HUD continues to have funds appropriated to it, pursuant to 42 U.S.C. § 1404a, these funds are in HUD's possession, severed from Treasury funds, and are subject to being paid out in execution of a judgment against HUD. *See Dewakuku v. Martinez*, 271 F.3d 1031, 1036-1037 (Fed. Cir. 2001).

---

[7]31 U.S.C.A. § 1341(a)(1)(A) provides in part: "An officer or employee of the United States Government ... may not ... make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation."

South Dakota Housing Development Authority acknowledges that the Contributions Contracts do not contain explicit indemnification provisions, but contends that the special nature of the relationship between the parties and unique factors demonstrating that the parties intended HUD bear responsibility for indemnification support an implied contractual indemnification. Specifically, SDHDA contends that § 1.4 of each Contributions Contract provides for a project account to be established and maintained by HUD to fund increased rents or other costs approved by the Secretary.[8]

Implied in fact contracts with the government are recognized as enforceable, and the requirements for establishing an implied in fact contract are similar to an express contract. *Marshall v. United States*, 21 Cl.Ct. 497, 499 (1990). A plaintiff in proving an implied in fact contract must show mutuality of intent, offer and acceptance, and actual authority on the part of the officer to bind the government. *Buffalo Nat'l. Bank v. United States*, 26 Cl.Ct. 1436 (1992). The amended third-party complaint in this case alleges no conduct of the parties that would support mutuality of intent for an implied contract to indemnify SDHDA under the facts of this case. In addition, the language in the Contributions Contract relied upon by SDHDA to support its claim of implied indemnification is not sufficiently clear or specific to support such a claim. Since the allegations in the amended third-party complaint accompanied by the language in the Contributions Contracts fail to meet the facial plausibility threshold on the implied contract indemnification claim, HUD's motion to dismiss is granted with respect to SDHDS's implied contract indemnification claim.

*Agency-based Indemnification*

SDHDA alleges that it is entitled to indemnification as HUD's agent in defending the action

---

[8] 24 C.F.R. § 883.604(b) (1) also provides:
A project account will be established and maintained by HUD as a specifically identified and segregated account for each project. The account will be established out of the amounts by which the maximum annual commitment exceeds the amount actually paid out under the ACC each year. Payments will be made from this account for housing assistance payments (and fees for Agency administration, if appropriate) when needed to cover increases in contract rents or decreases in tenant rents and for other costs specifically approved by the Secretary.

by the Plaintiffs. In its amended third party complaint SDHDA alleges that it "has administered the HAP Contracts in accordance with Notice 95-12 and the 1994 amendments, and has only adjusted Contracts Rents as directed and permitted by HUD." SDHDA further alleges in its amended third party complaint that "SDHDA acts and has acted as HUD's agent in administering the Section 8 HAP Contracts to which it is a party," and that "SDHDA acted with actual authority as HUD's agent in taking the actions challenged by plaintiffs." Doc. 144. In support of its claim for agency indemnification SDHDA relies upon Restatement (Third) of Agency § 8.14 (2006), which provides:

> A principal has a duty to indemnify an agent[9]
> (1) in accordance with the terms of any contract between them; and
> (2) unless otherwise agreed,
> . . .
> (b) when the agent suffers a loss that fairly should be borne by the principal in light of their relationship.

SDHDA cites a number of cases that have alluded to local housing agencies being HUD's agents. *See Rainier View Assocs. v. United States*, 848 F.2d 988, 990 (9th Cir. 1988) (overruled on other grounds); *United States v. McKay*, 274 F.3d 755, 758 (2d Cir. 2001); *Berger v. City of Cleveland*, 110 F.3d 63 (Table), 1997 WL 137381 at *1 (6th Cir. 1997). None of these cases contain a comprehensive analysis of the mentioned agency relationship.

In support of its position that the agency-based indemnification claim should be dismissed, HUD argues that SDHDA is not HUD's agent, and that the amended third-party complaint contains mere conclusory allegations and lacks sufficient factual information to provide the grounds on which an agency claim can be based. HUD maintains that the third party complaint lacks an allegation that HUD appointed SDHDA as its agent, so as to establish actual agency. *See* S.D.C.L. § 59-1-4.[10] HUD further maintains that the third party complaint lacks pleaded facts to support a reasonable conclusion that HUD's conduct misled the Plaintiffs to believe that SDHDA acted as HUD's agent.

---

[9]Restatement (Third) of Agency § 1.01 (2006) defines agency as follows:
Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.

[10]S.D.C.L. § 59-1-4 provides: "Agency is actual when the principal appoints the agent."

*See* S.D.C.L. § 59-1-5.[11]

HUD further maintains that overwhelming authority holds that state and local housing agencies are not HUD's agents under contractual arrangements comparable to the ones in this case. *See, e,g,, New Era Const. v. United States*, 890 F.2d 1152,1155 (Fed. Cir. 1989) (citing *Housing Corp. of America v. United States*, 468 F.2d 922, 924, 199 Ct.Cl. 705 (1972) (funding and approval of local projects "does not create an express or implied contract between plaintiff and defendant nor does it make the Commission defendant's agent through HUD); *Garreaux v. United States*, 77 Fed. Cl. 726, 732 (2007) ("The Court of Appeals for the Federal Circuit ('Federal Circuit') and its predecessor court have made clear that when the federal government subsidizes local government projects, the federal government does not make itself a party to contracts relating to the projects, nor does the local government become an agent of the federal government.")

In addressing issues surrounding the Civil Rights Attorney's Fees Awards Act of 1976, the Third Circuit Court of Appeals, analyzed whether a local housing agency was an agency for the United States. *See Staten v. Housing Auth. of City of Pittsburgh*, 638 F.2d 599 (3d Cir. 1980). In the *Staten* case the Third Circuit acknowledged that a great deal of funding for the Pittsburgh Housing Authority came from the federal government, but opined that funding alone would not establish an agency relationship between that Housing Authority and the federal government. Although the Third Circuit recognized that funding is one indication of whether a Housing Authority is an extension of the United States, it held it is not a determinative factor. The Third Circuit explained, "We must also consider the Agency's exclusive control over the federal grant funds, its freedom from federal involvement or control over the daily management and operation of the Authority, and the fact that the Housing Authority was created by and continues to be governed in accordance with state law."

---

[11]S.D.C.L. § 59-1-5 provides: "Agency is ostensible when by conduct or want of ordinary care the principal causes a third person to believe another, who is not actually appointed, to be his agent."

*Staten*, 638 F.2d at 604.

The South Dakota Housing Authority is likewise created and governed by state law. *See* S.D.C.L. § 11-11-2. The South Dakota Housing Authority is "an independent public instrumentality exercising essential public functions." S.D.C.L. § 11-11-10. The South Dakota Housing Authority is not under federal control in exercising many of its powers. In consideration of these facts and the applicable case law, this Court grants HUD's motion with respect to SDHDA's agency-based indemnification claim.

## II.
## WHETHER SOUTH DAKOTA HOUSING DEVELOPMENT AUTHORITY IS ENTITLED TO PURSUE ITS DECLARATORY JUDGMENT CLAIM?

In Count III of its Amended Third-Party Complaint, SDHDA seeks declaratory relief in applying the 1994 amendments and Notice H 95-12 regarding future adjustments of Contract Rents for the HAP Contracts to which it is a party, and seeks a declaration of its right to have the rent adjustments funded by HUD pursuant to the related Contributions Contracts. In its prayer for relief SDHDA requests that this Court "[d]eclare the respective rights and responsibilities of SDHDA and HUD in applying the 1994 amendments and Notice H 95-12 with respect to determining and funding future adjustments of Contract Rents for the HAP Contracts to which SDHDA is a party."

HUD contends that SDHDA is asking the Court to render a sweeping advisory opinion that relates to the properties of non-parties. HUD argues that SDHDA's declaratory judgment claim fails to present a case or controversy as to the contracts of non-parties and should be dismissed for lack of subject matter jurisdiction. HUD further contends that since the parties completely settled three Plaintiffs' claims, and corresponding portions of South Dakota Housing's third-party claims in December of 2012, the request for declaratory relief regarding rent adjustment disputes under those three HAP contracts is moot. In addition, HUD urges this Court to refrain from rendering declaratory relief because these issues are more appropriately resolved by the decision on Riverview and South Dakota Housing's joint motion for final judgment and SDHDA's breach of contract claim.

The federal courts' jurisdiction is limited by Article III of the Constitution to certain cases and controversies, and "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases

or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks omitted). The Supreme Court has explained:

> The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). There has existed in the past a substantial controversy in the case at hand, and the amended third-party complaint alleges that "[t]he alleged breaches of plaintiffs' HAP Contracts affect not only past rent increases that were not granted, but also future annual rent increases for Cathedral Square, Western Heights, West Park, and Riverview Park." Doc. 144, par. 24. Other considerations exist, however, which do not support this Court exercising its discretion in granting declaratory relief.[12]

Plaintiff Riverview and SDHDA had sought a declaratory judgment establishing their rights and obligations under the Riverview Housing Assistance Payments Contract with respect to future annual rent adjustments. In its June 13, 2013 Memorandum Opinion and Order Re: Motion for Final Judgment (Doc. 152), this Court declined to render the requested declaratory relief, explaining: "This Court has previously expressed its view that the need for prospective relief would be satisfied by the res judicata effect of a judgment in the breach of contract claims. *See Cathedral Square Partners Ltd. P'ship v. South Dakota Hous. Dev. Auth.*, 875 F.Supp.2d 952, 966 (D.S.D. 2012); *Cathedral Square Partners Ltd. P'ship v. South Dakota Hous. Dev. Auth.*, 679 F.Supp.2d 1034, 1044 (D. S.D.

---

[12] The Supreme Court, in discussing standing, an element of the case or controversy requirement, has observed:
> The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches.[citations omitted]. In keeping with the purpose of this doctrine, "[o]ur standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." [Raines v. Byrd, 521 U.S. 811, 819-820 (1997)].

16

2009).""

In that June 13, 2013 Memorandum Opinion, this Court further reasoned:

> The Federal Declaratory Judgment Act is discretionary, not mandatory, and an important consideration in whether a district court exercises its discretion is the existence of another, more appropriate remedy. *Gulf Underwriters Ins. Co. v. Burris*, 674 F.3d 999, 1004 (8th Cir. 2012). It is recognized that where government action is involved, district courts should not use their discretion to issue a declaratory judgment unless the need for such relief is clear, and neither remote nor speculative. *Barnes, v. Kan. City Office of Fed. Bureau of Investigation*, 185 F.2d 409, 411 (8th Cir.1951); *Mills v. City of Springfield*, 2010 WL 3526208 at *14 (W.D.Mo. Sept. 3, 2010).

Doc. 152.

This Court maintains that the res judicata effect of a judgment for breach of contract for Plaintiffs and SDHDA satisfies the need for declaratory relief, and that this case, which involves legislation governing the conduct of the Department of Housing and Urban Development, is not an appropriate case for the Court to exercise its discretion in granting relief under the Federal Declaratory Judgment Act. For these reasons the Court is granting HUD's motion to dismiss with regard to SDHDA's request for declaratory relief. Accordingly,

**IT IS ORDERED** that HUD's Rule 12(b)(1) and (c) Motion for Partial Dismissal and Judgment on the Pleadings (Doc. 145) is granted.

Dated this 14th day of August, 2013.

BY THE COURT:

*[signature]*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *[signature]*
DEPUTY

17